323

Jessie James LUNNERMON, Petitioner.

v.

C. C. PEYTON (J. D. Cox), Superintendent, Virginia State Penitentiary, Respondent.

Civ. A. No. 67-C-64.

United States District Court, W. D. Virginia, Danville Division.

Feb. 25, 1970.

Earle Garrett, Garrett, Garrett & Smith, Danville, Va., for petitioner.

Gerald L. Baliles, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

This case comes before the court on a petition for a writ of habeas corpus filed *in forma pauperis* by Jessie James Lunnermon, a state prisoner, pursuant to 28 U.S.C. § 2241. The petition was filed in this court on December 7, 1967.

Petitioner is currently serving a term of life imprisonment in the Virginia State Penitentiary pursuant to a conviction of first degree murder in the Circuit Court of the City of Martinsville, imposed on May 21, 1957. The conviction resulted after a trial by jury in which petitioner, represented by court-appointed counsel, entered a plea of not guilty.

Four grounds for relief were presented by petitioner to this court: (1) that his confession was coerced and involuntary, (2) that he was ineffectively represented by counsel, (3) that he was denied the right to appeal, (4) that adverse publicity precluded a fair and impartial trial.

This court originally rendered judgment on these claims on February 29, 1968, 281 F.Supp. 986. By memorandum decision (No. 12,296, November 18, 1968), the United States Court of Appeals for the Fourth Circuit remanded the case to this court. This court's judgment dismissing the claim of ineffective representation of counsel was affirmed. As to the other three claims, the memorandum decision stated that the state court remedies were exhausted and that a plenary hearing should be held.

An able and competent attorney was appointed by this court to represent petitioner and on March 20, 1969, a plenary hearing was held. At this hearing petitioner's appointed counsel stated:

I have discussed this matter with the petitioner, and I think he and I are pretty well in agreement that the gist of his petition [is] whether mental or physical condition at the time * * whether or not the confession was voluntary. I think if we determine that issue we have determined in effect everything.

The court is likewise convinced that there is nothing to petitioner's claim of undue pretrial publicity. The record does not disclose nor does petitioner raise any factual circumstanc-

es which in any way establish this claim. Petitioners in habeas corpus must come forward with some factual allegations to support their legal contentions. Lunnermon's appointed attorney after investigation could find no facts to support this claim.

██ As to the denial of the right to appeal the court has only the naked assertion of the petitioner to rely upon. Petitioner waited ten years before asserting this claim, and after the attorney representing him had died. Petitioner's counsel in this proceeding could find nothing to corroborate this charge. The fact of this long delay in bringing this charge and the fact that the chance for rebuttal was rendered ineffective are sufficient reasons to dismiss this claim. See Wade v. Peyton, 378 F.2d 50 (4th Cir. 1967).

Finally, petitioner contends that a coerced confession was obtained from him by the police and used against him at his trial. The uncontradicted facts are: On Sunday, March 31, 1957, Lunnermon was arrested for the murder of his wife. At that time he was suffering from a bullet wound in the center of his forehead. The arresting officers took him immediately to the hospital for examination and possible treatment. Later on the same afternoon, he was discharged to the city police and remained in the county jail until the next day, April 1, when he was re-admitted to the hospital. The following day, April 2, he was again discharged from the hospital and was taken pursuant to court order to the State Prison Hospital in Richmond, where he remained for some two weeks. While he was in jail on March 31, Lunnermon signed two copies of a statement admitting that he had shot his wife.

There is considerable conflict surrounding the circumstances under which the statement was obtained. Lunnermon testified that at the time he was dazed, in considerable pain, and in fear of his life. He also stated that he was not advised of his rights and was led to believe that he would not receive any medical attention for his wound until he signed a statement. A minister who saw Lunnermon in the hospital testified that Lunnermon appeared to be in "bad shape" and could not carry on a conversation. The police officer present at the time the statement was taken testified that the wound was not serious. He denied that any promises or threats were made in connection with medical treatment. He further testified that Lunnermon was warned of his right to remain silent and that any statement could be used against him.

██ In returning this case for a hearing, the United States Court of Appeals for the Fourth Circuit was concerned about the lack of information as to the medication administered to petitioner before the statement was given, and about the failure of the state judge to consider petitioner's limited intelligence and poor education. Had the state court thought Lunnermon was coerced into signing the confession with a promise of medical aid, it surely would have found the confession to be involuntary. It heard sufficient evidence on that point and this court will defer to that determination.

██ Left to determine is the question whether the confession was a result of any physical or mental weaknesses of the petitioner, i. e., the effect of the gunshot wound, the effect of the medication, the effect of petitioner's limited intelligence, and the effect of petitioner's poor education. Intelligence and education are just two elements to consider in determining the voluntariness of a confession. Petitioner alleges that he has an I.Q. of 64 and graduated only from the third grade. The court is not willing to say that these facts alone are sufficient to make the confession involuntary. These are facts to be considered in determining the totality of the circumstances.

██ The most important witness absent at the plenary hearing in the state court was the examining physician at the hospital on the day of the arrest.

This physician, G. Sylvester Price, Jr., is now living in New York and on December 2, 1969, was deposed in connection with this case.

With respect to the medication given petitioner and its effect on the confession Dr. Price testified:

A. He got tetanus antitoxin and gas gangrene medication. Apparently that was what was being used at the time for gunshot wounds.

Q. Could you comment on the effect that that would have upon one's ability to walk, talk, communicate with people? .

A. He could have an allergic reaction to it of some sort, possibly the gas gangrene, but the tetanus antitoxin, he shouldn't have any allergic reaction to at all. But the reason we gave him the Chlortritem was to cut down on the allergic reaction.

Q. But that shouldn't effect his mental ability—

A. No, I wouldn't think so.

As to the physical condition of Lunnermon at the time and the effect of the gunshot wound, Dr. Price testified:

Q. Doctor, let me ask you again then, this question and in this manner. Based upon your professional judgment and your personal recollection, to what extent you can recall, is it your opinion then, that this man, even though he had received a bullet wound on March 31, that on April first, 1957 he was capable of carrying on a conversation either with a doctor or police authorities or someone else?

A. It is my opinion that I wouldn't have released him if I didn't think that he was able to communicate normally. If I had been impressed that there was any abnormality, I wouldn't have released him.

* * * * * *

Q. And you are satisfied then that he wouldn't have been released from the hospital if he had been incapable?

A. No, I wouldn't have released him. I am more on a conservative side as far as releasing people. I mean, I would rather err and raise the hospital bill rather than let somebody go out that may cause damage to themselves or to somebody else in the community.

I think the testimony of Dr. Price establishes very clearly that Lunnermon was not under the effect of any drugs that would have induced him to confess. The testimony of Dr. Price, also, establishes that petitioner was not incapacitated by the bullet wound. According to Dr. Price's testimony, petitioner was fully capable to talk to the police. This court believes the testimony of Dr. Price. I will not succumb to the temptation of judging this case on outward appearances only. Testimony by the qualified physician was to the effect that Lunnermon was competent physically to be released to the police. I am persuaded more by expert testimony than by outward appearances which are often deceptive. Consequently, I hold that the gunshot wound was not of such nature as to make the confession involuntary.

This court has been directed to the case of Reck v. Pate, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961). In *Reck* the subnormal intelligence of the petitioner was just one of the circumstances surrounding the confession. The petitioner there was "for all practical purposes, held incommunicado". He was physically weakened and in intense pain. The circumstances here are not so overbearing as in *Reck* as to require a determination that the confession was involuntary. Lunnermon allegedly has a low I.Q., but the other circumstances did not compound petitioner's deficiencies in intelligence and education. His physical condition was reported by a qualified physician to be well enough that Lunnermon could be safely released from the hospital to the police. Nor was Lunnermon at a disadvantage from the effect of any drugs. The totality of the circumstances do not require the court to find the confession was involuntary.

If the petitioner wishes to appeal this judgment or any part thereof, he may do so by filing with the clerk of *this* court a notice of appeal. Failure to file the notice of appeal within 30 days may result in a denial of the right to appeal. The notice shall state the following:

1. The party or parties taking the appeal;

2. The judgment, order or part thereof appealed from; and

3. The court (United States Court of Appeals for the Fourth Circuit) to which the appeal is taken.

For the foregoing reasons, it is adjudged and ordered that the petition for a writ of habeas corpus be dismissed and the relief denied.

The clerk is directed to certify copies of this opinion and judgment to the petitioner and to the respondent.