[No. 41634.   En Banc.   July 15, 1971.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN REECE, *Appellant*.

*W. Gordon Kelley,* for appellant (appointed counsel for appeal).

*R. A. Hensel, Prosecuting Attorney,* and *Lowell D. Sperline, Special Deputy,* for respondent.

ROSELLINI, J.—The defendant was charged upon two counts of assault, one of attempted rape, and one of manslaughter. He entered a special plea of not guilty by reason of insanity. The jury found the defendant guilty of assault and manslaughter.

Upon his appeal, we are again asked to abandon the test of insanity commonly known as "M'Naghten's rule" and to adopt the test proposed by the American Law Institute. In their agreed statement of the case, the parties have stipulated that there was sufficient evidence of insanity to support a verdict under the A.L.I. test as well as under the instructions given by the court.

The jury was instructed in accordance with the rule adhered to by this court in *State v. White,* 60 Wn.2d 551, 374 P.2d 942 (1962) and *State v. Tyler,* 77 Wn.2d 726, 466 P.2d 120 (1970). The test, the jury was instructed, is:

> Is the mind of the accused so diseased or affected at the time of the commission of the act charged that he is unable to perceive the moral qualities of the act with which he is charged and is unable to tell right from wrong with reference to the particular acts charged.

The test advocated by the appellant[1] was embodied in this proposed instruction:

> A person is not responsible for criminal conduct if at the time of such conduct as the result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

Three reasons are advanced why this court should abandon the rule to which it has adhered consistently. The first is that a number of other courts, including most federal courts (but not including the United States Supreme Court), have adopted the A.L.I. test since 1962. This we do not consider to be a legal argument. If it is an argument

---

[1]Based upon § 4.01 of the Model Penal Code (Proposed Final Draft No. 1, April 1961).

based upon the assumption that reason and justice lie with the majority, it is equally if not more significant that the majority of state courts have continued to adhere to M'Naghten's rule. If the theory is that because others have reexamined their approach to the defense of insanity, this court should do likewise, the answer is that we are amenable to persuasion and are ready to consider the appellant's arguments.

One of these is that the courts and the psychiatrists should not have two different definitions of insanity. This proposition may have merit. However, the appellant has cited us to no evidence that the A.L.I. test embodies a consensus of the medical profession on the nature of insanity. Our examination of recent literature in the controversy over M'Naghten and other proposed tests of insanity convinces us that there is no agreement among psychiatrists concerning a definition of insanity. *See* concurring opinion of Burger, J., in *Blocker v. United States,* 288 F.2d 853, 859-62 (D.C. Cir. 1961), reprinted in part by the Joint Committee on Continuing Legal Education of the American Law Institute and the American Bar Association in Problems of Criminal Law and Its Administration, *The Problem of Responsibility,* No. 7, at 55 (1962). *See also* page 47 of that volume, where Dr. Manfred Guttmacher, a member of the A.L.I. Criminal Law Advisory Committee, is reported as having told his fellows that neither M'Naghten's rule nor the A.L.I. test is meaningful to a psychiatrist.

One psychiatrist-lawyer has said that, under both these tests, as well as the Durham test, courts consistently ask psychiatrists to make unpsychiatric determinations. This writer said:

Psychiatrists can describe, diagnose, and treat mental illness; they cannot crawl into a defendant's cranium and determine for the court information as subjective as whether the defendant knew or appreciated the difference between right and wrong or whether the defendant had a substantial capacity to conform.

J. Robitscher, J.D., M.D., *Psychiatry and Changing Con-*

*cepts of Criminal Responsibility,* 31 Federal Probation 45, 47 (1967).

A professor of clinical psychology has offered a defense of M'Naghten, joining with a lawyer in publishing an article in 51 Minn. L. Rev. 789 (1967), entitled "The Virtues of M'Naghten."[2]

As these authors point out, the purpose of the insanity test is to aid in determining the culpability of the defendant, that is, to obtain an answer to the question: did he have the requisite intent to establish the mens rea? Its purpose is not to diagnose or analyze the defendant's mental or emotional state for treatment purposes.

This court has not been furnished with any evidence that there is any general agreement among psychiatrists that there is a proper standard for determining the question of whether a person who has committed an act designated as criminal by the legislature should be held responsible for that act. In short, assuming that this court were disposed to adopt a psychiatric definition of criminal insanity, it could not do so at this point, since it has not been shown what that definition is, if one in fact exists.

The final argument of the appellant is that the court should change the definition of criminal insanity in order to protect the public from compulsive acts of violence. The theory, as we understand it, is that under the A.L.I. test more persons will be found not guilty, and that a person found not guilty by reason of insanity will be detained in a state mental institution longer than he would be detained in a penal institution and will not be released until he is cured.

We have before us no data to ascertain whether this sociological argument is valid. We have no judicial knowledge that persons found "not guilty by reason of insanity," who are in fact compulsive, are usually confined in state mental institutions and treated until they have recovered

[2]Joseph M. Livermore, Assistant Professor of Law, University of Minnesota and Paul E. Meehl, Professor of Clinical Psychology, University of Minnesota.

sufficiently from their "illness" to be no longer dangerous to be at large. We are not advised concerning the rate of recidivism.

Furthermore, we are not informed that persons found guilty of crimes and sent to penal institutions are denied psychiatric care if they are in fact mentally ill.

RCW 10.76.060 and .070 provide for the commitment and treatment of a person who is found to be criminally insane and for his confinement until a jury finds that he is safe to be at large. Thus we know that the proper statutory authorization exists. But a similar authorization is found in RCW 72.08.110 for the commitment of persons in penal institutions who are found to be mentally ill. If we can assume from the mere existence of statutory direction or authorization that proper treatment is accorded and rehabilitation occurs, we must assume that an insane person who has committed a crime receives this care and becomes rehabilitated, whether or not he is sent to a penal institution. We may have some doubts as to whether adequate treatment is afforded, but, in the absence of evidence to the contrary, the court must presume that the statutory mandate is followed.

Whether a person found guilty of having done a criminal act is to be punished or treated is a question for legislative consideration. It would appear to the court that the jury's determination on the question of the defendant's mental or emotional health should not constitute the final diagnosis, if the defendant is in fact found guilty and committed to a penal institution, or, indeed, if he is found not guilty by reason of insanity. The jury's function is to determine whether the defendant committed the crime. The question of whether the defendant needs psychiatric treatment is relevant only insofar as it throws light upon that question. What we mean to say is that rehabilitation is a vital concern of the state; it is not a concern of the jury while it ponders the sole question of guilt or innocence.

We are not prepared at this time to adopt a broader rule for establishing the defense of insanity, upon the strength

of the arguments made in this case and the data presented.

It should be observed that the reasons which are usually advanced for abandoning the rule of M'Naghten involve consideration of factual matters which can best be presented to the legislature where there is an opportunity for other interested parties, including psychiatrists, psychologists, penologists, administrators of institutions, and sociologists, to present their views. The court hears only lawyers, and in a matter obviously involving so many considerations which are outside the lawyer's repertoire, it is reluctant to adopt a theory which is not shown to have substantial validity.[3]

We cannot lose sight of the fact that the entire criminal law proceeds upon the assumption that a rational man can control his acts and can be deterred by fear of punishment. If medical science discovers that this is a false assumption, that there is no "free will," then what is called for is an entirely new legislative approach to the problems of antisocial conduct.

We are particularly reluctant to adopt a rule permitting a defense of compulsive conduct when the legislature has given some indication that it does not consider this a proper defense. In RCW 71.06, the legislative body has provided for the treatment of sexual psychopaths and psychopathic delinquents but has not seen fit to relieve them of responsibility for their criminal acts.

The judgment is affirmed.

HAMILTON, C.J., HALE, NEILL, STAFFORD, and WRIGHT, JJ., concur.

HUNTER, J. (dissenting)—I dissent.

I would abandon the "M'Naghten rule" and follow the test for insanity embodied in the rule of the American Law Institute or a test comparable, for the reasons stated in my

---

[3]Not all critics of M'Naghten want to see the definition of insanity expanded to embrace other manifestations of mental illness. For example, *see* N. Morris, *Psychiatry and the Dangerous Criminal*, 41 S. Calif. L. Rev. 514 (1968), for a very learned critique of the insanity defense. It is the conclusion of Dr. Morris after many years of thoughtful study

dissent in *State v. White,* 60 Wn.2d 551, 374 P.2d 942 (1962). The jury should have been instructed on the American Law Institute test for insanity as stated in the defendant's proposed instruction. The judgment of guilty entered upon the jury verdict should be set aside and a new trial granted to the defendant.

FINLEY, J. (dissenting)—The majority opinion points out quite accurately that at this stage in the development of criminal law administration there are differing evaluations and views as to the social utility and desirability of the M'Naghten, the Durham, and the A.L.I. tests or rules in regard to the defense of insanity in the trial of serious criminal offenses. Conceding there is some truth in the majority's discussion does not, in my judgment, justify "sweeping both the Durham and the A.L.I. rules neatly under the carpet" and, in effect, refusing peremptorily to consider the possibility of some revision and updating of our so-called M'Naghten test regarding the defense of insanity.

It is my belief that there is timely and deserved need for affirmative thinking and action regarding the problem and the potential for a more rational and better resolution in our state of the criminal defense of insanity. We are not living—and the law does not operate—in the best of all possible worlds. Even so, it has been and is, I think, the role and the responsibility not only of the courts but of the legal profession in its entirety to discard anachronistic— even long-standing and traditional—methods when better ways of doing things become convincingly apparent. There is nothing "newfangled" or shockingly inappropriate in this general operating principle in the law. Realistically, it has been the *modus operandi* from earliest times in the growth of our Anglo-American jurisprudence. In fact, it is, perhaps, one of the more basic underlying principles of the

that the "defense" of insanity should be abolished and that evidence of mental or emotional illness should simply be admissible as bearing on the question of mens rea or "guilty intent." In an appendix, he cites similar views of other students of this problem.

great common law tradition of Anglo-American law. Consistent with this principle, and because I agree with the dissenting views expressed by Justice Hunter that the A.L.I. test or rule "simply provides a better way of doing things," I think this court should abandon the "M'Naghten rule" and approve and implement what I regard as a more rational procedure embodied in the A.L.I. rule or test. Consequently, I would reverse the judgment and grant a new trial with instructions to the trial court that the A.L.I. test should be used.

Assuming we have not reached the ultimate state of perfection in the administration of the criminal law, and, furthermore, assuming increasing sophistication of psychological-psychiatric knowledge, experience, and skill regarding treatment and rehabilitation of the criminally insane, there is no reason to presume that adoption of the A.L.I. test or rule should or will mark the "apex" of timely, reasonable, and responsible judicial response concerning the defense of criminal insanity. Professor Morris' observation is relevant in this regard:

> Most of the scholarly discussion about the insanity defense has related to the wording of the various tests of insanity. But, this can only be a beginning for a more profound consideration of the defense's procedural context, leading ultimately to fundamental questions about crime and responsibility.

Morris, Book Review, *The Insanity Defense and a "Jury" Experiment,* 43 Wash. L. Rev. 623, 632 (1968).

Ideally, it seems to me that existing judicial procedures governing the defense of insanity in the trial of serious criminal cases may require further significant modification either legislative or by court rule where appropriate to insure a more rational trial format or forum for (a) determining the validity of a given assertion of insanity and (b) additionally for determining the duration of institutional custody—possibly permanent, lengthy, or temporary—and the social purpose or objective of custody. Potentially in hearings including such procedures and determinations

would be questions as to proper rehabilitation or other treatment, or other methods of handling or disposition of those persons who successfully interpose the defense of insanity.

One productive modification to existing procedures might be adoption or institution of the so-called "bifurcated" trial,[4] wherein the determination of whether or not the accused committed the alleged crime is separated from the determination as to the accused's mental capacity at the time of commission of the crime.

Under such a procedure, the accused's capacity to stand trial would be ascertained, as is presently done, prior to commencement of the trial on the substantive charge. Where determined that the accused is competent to stand trial, the trial would then be divided into two separate stages or phases. The first phase would be limited to a determination of whether or not the accused had actually committed the act charged. If the trier of fact determined that the accused did not commit the act, the proceeding would, of course, terminate. Where, however, the trier of fact finds the accused committed the act, the trial would continue or reconvene to allow the trier of fact to consider and determine both the accused's mental competency at the time the criminal offense was committed, and the length, duration and kind of custody, if any, to be imposed.

A bifurcated trial procedure would allow the trier of fact

---

[4] It is worthy of passing comment to note that the "bifurcated" or "two-step" system for the trial of cases involving the defense of insanity as presently employed in California has received generally unfavorable scholarly reaction. *See, e.g.,* Louisell and Hazard, *Insanity as a Defense: The Bifurcated Trial,* 49 Calif. L. Rev. 805 (1961); and Comment, *The Gradual Decay of the Bifurcated Trial System in California and the Emergence of "Partial Insanity": 1966,* 3 Calif. W. L. Rev. 149 (1967).

However, the California procedure—instituted in 1927—arose from a legislative conviction that the insanity defense was a "sham defense used by the obviously guilty to gull juries into verdicts of acquittal" (49 Calif. L. Rev., at 808), rather than from an enlightened attempt or desire to revise judicial administration of criminally insane persons to conform more closely with advances in the medical and psychological-psychiatric scientific fields.

to concentrate and focus attention upon the accused's past, present, and possibly future mental condition, and to reach reasoned conclusions as to the nature of the mental condition of the accused, the potential for treatment, rehabilitation and release, or the lack of such potential, and the need for lengthy or permanent custody for the protection of society. Such determinations hopefully could be made absent mixed feelings and confusion regarding moral values and moral responsibility to society of the accused as perpetrator of the alleged criminal act.

In my judgment, some procedure such as the above, employed in cases involving the defense of insanity, could do much to foster a more rational and socially productive and protective approach to the problem of the defense of criminal insanity.