[No. 41889.    En Banc.    August 10, 1972.]

THE STATE OF WASHINGTON, *Respondent*, v. GARY LEE
QUINLIVAN, *Appellant*.

*Kempton, Savage & Gossard*, by *Anthony Savage*, for
appellant.

*Christopher T. Bayley, Prosecuting Attorney, James J.
Lamont* and *Marco J. Magnano, Jr., Deputies*, for respon-
dent.

FINLEY, J.—Defendant appeals from convictions upon
counts of kidnapping in the first degree, murder in the
second degree, and murder in the first degree, and from the
imposition of the death penalty for first-degree murder.

The crimes involved took place on December 19th and
20th, 1963. They were an outgrowth in one way or another

of a relationship that defendant had in 1963 with one Joan Marlatt. Defendant lived for a while with Mrs. Marlatt but she left him when, according to her, he refused to work and subjected her to physical abuse. She then went to live with her mother, Gladys Bodine. After Mrs. Marlatt's departure, defendant made continued efforts to see her.

On the afternoon of December 19, 1963, defendant asked a friend to drive him to Kent. The friend did so, leaving defendant near the home of Mrs. Bodine, and finally returning to Seattle when defendant did not come back to the car. Earlier that afternoon defendant had stated that he was going out to see Mrs. Bodine to get some "right answers" about his relationship with Mrs. Marlatt. The defendant later stated that he had used some physical force on Mrs. Bodine when she failed to give satisfactory answers to his questions, but he said that she was alive when he left her. On the following day, however, Mrs. Bodine was found dead in her house; an autopsy revealed that she had been strangled. The defendant was charged with murder in the first degree, and convicted of murder in the second degree, in connection with the death of Mrs. Bodine.

The events of the day following Mrs. Bodine's death were originally described by defendant in a statement he made to the King County Sheriff's Office. In this statement he related that he asked his friend Fritz Donahue to drive him, together with his personal belongings which included a rifle, to see Mrs. Marlatt in Kent. In searching for her they lost their way and eventually stopped so that the defendant could relieve himself. Both defendant and Donahue got out of the car and defendant took his rifle out of the car to show it to Donahue. According to this statement, defendant slipped in the mud and the gun went off. He saw a shadow and became scared and ran into the woods. In a later statement, however, the defendant admitted that he had intentionally aimed and fired the rifle at Donahue. Police investigation revealed that the scene of Donahue's death was muddy, and that there were signs that somebody had slipped. However, the autopsy of Donahue indicated

that he had died of a gunshot wound in the head, with the wound in a horizontal plane—facts which are consistent with the gun being held at shoulder level and directly fired at the victim. As a result of this incident defendant was charged with and convicted of murder in the first degree of Fritz Donahue.

The record shows that the defendant came out of the woods at the home of Mrs. Patricia Jean Jaque. He forced his way into her home at rifle point and eventually made her drive him to his brother's house. The defendant then demanded that Mrs. Jaque drive him to Tacoma. While on the way there she and the defendant were apprehended by law enforcement personnel. As a result of this incident, defendant was charged with and convicted of kidnapping in the first degree.

Defendant pled not guilty to these charges and also entered a special plea of not guilty by reason of insanity. The case was originally brought to trial on June 1, 1964, but an order was entered in which the defendant was held incapable of appreciating his peril and rationally assisting in his defense. The trial proceedings were stayed and defendant was committed to Eastern State Hospital. In July of 1968, defendant was again ordered to stand trial, and was again found incompetent. The case finally came to trial on the merits on January 13, 1971. Verdicts were returned on January 31, 1971. The defendant was found guilty of murder in the second degree in the death of Mrs. Bodine; of murder in the first degree in the death of Fritz Donahue, and the death penalty was imposed; and of kidnapping in the first degree in the abduction of Mrs. Jaque.

In this appeal error is assigned to several actions of the trial court. Appellant's second assignment of error, relating to the trial court's insanity instruction, is the basis for our disposition of this case, granting a new trial. The court's instruction No. 25, on the defense of insanity, provided in relevant part:

Concerning the defendant's plea of insanity at the time of the alleged commission of the acts charged in the infor-

mation, you are instructed that by such plea the defendant puts in question whether at such time he had such mental capacity or *moral freedom to do or abstain from doing the acts charged.* Not every form of mental derangement, nor every unsound condition of mind constitutes such legal insanity or mental irresponsibility. The test is: Does a person have sufficient mental capacity at the time of the commission of an act to comprehend what he was doing and distinguish right from wrong with relation to such act? If, under all the evidence, you find that the defendant was possessed of sufficient mental capacity or moral freedom to comprehend the nature of his acts, to distinguish right from wrong as to such acts, then said plea avails him nothing.

(Italics ours).

Appellant Quinlivan contends that this instruction is error because it combines the requirements of proof of the American Law Institute "irresistible impulse" test with the required elements of the M'Naghten test, thereby creating an added and improper burden for the defendant to meet in attempting to demonstrate his insanity. We agree.

■ A majority of this court has consistently held that the so-called M'Naghten rule is the proper test for insanity in this state. *State v. Reece,* 79 Wn.2d 453, 486 P.2d 1088 (1971); *Seattle v. Hill,* 72 Wn.2d 786, 435 P.2d 692 (1967); *State v. Collins,* 50 Wn.2d 740, 314 P.2d 660 (1957). Under this test the jury is properly instructed to ask itself the following question:

Is the mind of the accused so diseased or affected at the time of the commission of the act charged that he is unable to perceive the moral qualities of the act with which he is charged and is unable to tell right from wrong with reference to the particular acts charged.

*State v. Reece, supra* at 454.

Competing with the M'Naghten rule for judicial acceptance is the A.L.I. test, which provides that:

A person is not responsible for criminal conduct if at the time of such conduct as the result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

*State v. Reece, supra* at 454. The challenged instruction in the instant case required the defendant to meet the requirements of both tests, and as such was an improper statement of the law of insanity of this state. The challenged instruction adequately put before the jury the M'Naghten test as it is applied in this state. But that instruction also suggested to the jury that the defendant must prove in addition his lack of "moral freedom to do or abstain from doing the acts charged." This language constituted an addition of a requirement to the M'Naghten test and placed an additional burden upon the defendant which is not sanctioned by the law of this state as set forth in the decisions of this court. We have concluded, therefore, that defendant must be granted a new trial in which the jury is instructed on insanity strictly in terms of the M'Naghten test. In reaching this conclusion, we believe that arguments as to the relative leniency of the two insanity tests are irrelevant since, regardless of whether the A.L.I. test is more lenient than the M'Naghten rule, the combination of the two tests in the instant case imposed an improper burden on the defendant. Also, the fact that defense counsel himself proposed an insanity instruction along A.L.I. lines does not preclude defense counsel from objecting when language from his proposed instruction has been added to, rather than substituted for, the language of the M'Naghten rule.

On retrial of this case, two erroneous or potentially confusing procedures brought to the attention of this court by appellant should be modified as follows.

■ First, we believe that the trial court's instruction on first-degree kidnapping was erroneous. The trial court instructed the jury that it could convict the defendant of kidnapping in the first degree if it found an intent on the part of the defendant *either* to hold Patricia Jean Jaque for service *or* to extort money or reward for her release.[1]

---

[1]Instruction No. 23 provided that: "To convict the defendant Gary Lee Quinlivan of the crime of kidnapping in the first degree as charged

However, RCW 9.52.010 clearly indicates that to be found guilty of first-degree kidnapping a defendant must be shown either to have secretly confined or imprisoned another, *or* to have held another person to service in any way with the intent to extort or obtain money or reward for his release or disposition. *State v. Berry,* 200 Wash. 495, 511, 93 P.2d 782 (1939). Upon retrial, the kidnapping instruction should be corrected to accord with the language of the statute.

Second, we believe that under the circumstances the trial court erred in not instructing the jury that sympathy was a proper consideration in deciding the issue of penalty. In its instruction No. 35 the trial court instructed the jury not to be moved by sympathy in reaching its verdict.[2] In the

---

in Count III of the information, the state must prove to you beyond a reasonable doubt:

"(1)  That on or about the 20th day of December, 1963, the defendant Gary Lee Quinlivan did willfully seize, confine or inveigle one Patricia Jean Jaque;

"(2)  That said act was done with the intent:

"(a)  to secretly confine or imprison Patricia Jean Jaque;
"OR
"(b)  to hold Patricia Jean Jaque for service;
"OR
"(c)  to extort money or reward for the release or disposition of Patricia Jean Jaque;

"(3)  That said acts occurred in King County, Washington.

"If you find from all the evidence admitted in this case that the state has proved beyond a reasonable doubt elements (1), (3) and (2)(a) or (2)(b) or (2)(c) of the crime charged in the information, then it will be your duty to return a verdict of guilty of kidnapping in the first degree. In connection therewith you are instructed that sub-headings (a), (b) and (c) are alternatives and only one need be proven.

"On the other hand, if after weighing the evidence you entertain a reasonable doubt as to the establishment of any one of the foregoing elements, then it will be your duty to return a verdict of not guilty."

[2]Instruction No. 35 provided that: "In conclusion let me remind you that each of you has taken a solemn oath that you will well and truly try this case and a true verdict render upon the evidence given in the trial and upon the law as now given you by the court. Neither must you allow yourselves in the least to be moved by sympathy or influenced by prejudice. The question of guilt or innocence is a question of fact, not a question of prejudice or what shall the punishment be. If, as

following instruction, No. 36, the trial court told the jury:

> If you find the defendant guilty of murder in the first degree, then, in determining what his punishment should be, you should consider all the evidence that has been admitted in the case, not only that which is directly connected with the crimes charged, but also the evidence bearing upon defendant's background, rearing, environment and family history.

While instruction No. 36 would normally have had the effect of leaving open to the jury the possibility of considering sympathy as a factor in reaching its penalty decision, instruction No. 35 specifically warned the jury not to consider sympathy in reaching its verdict. The penalty decision was part of the jury's verdict. Therefore, notwithstanding the language of instruction No. 36, the jury could have concluded that sympathy was to play no part in its decision on the penalty issue.

■ Contrary to this implication in the instructions, sympathy is an appropriate factor in the jury's consideration of the penalty issue. *See People v. Bandhauer,* 1 Cal. 3d 609, 463 P.2d 408, 83 Cal. Rptr. 184 (1970); *People v. Polk,* 63 Cal. 2d 443, 406 P.2d 641, 47 Cal. Rptr. 1 (1965). On remand it should be made clear to the jury (1) that considerations of sympathy are to be excluded only from that portion of the verdict relating to guilt or innocence; and (2) that sympathy may properly be considered as a factor in the determination of the penalty issue.

■ We have examined appellant's other assignments of error and find them to be without merit. Appellant contends that the trial court erred in refusing to give a requested instruction on the possibility that mental disease or

---

a matter of fact, from the evidence a defendant is guilty, no amount of sympathy will make a defendant innocent. If a defendant is innocent, no amount of prejudice will make him guilty; for regardless of what the penalty may be, regardless of any feelings of prejudice, a defendant is upon the evidence, and the evidence alone, either guilty or not guilty. What is the true verdict as shown by the evidence is the one question before you.

"This being a criminal case, it will require your entire number of twelve to return a verdict."

defect not amounting to insanity might negative the existence of the requisite mental condition for a particular crime. We do not agree. The court's instructions on the issue of intent were adequate in that they permitted appellant to thoroughly argue to the jury this theory of the case. *See State v. Hardwick,* 74 Wn.2d 828, 447 P.2d 80 (1968).

Appellant also contends that the trial court erred in refusing to give requested instructions on excusable homicide, accident, and the burden of proof involved in accidental homicide. On the issue of excusable homicide the court instructed the jury as follows:

> Under certain circumstances and conditions a homicide may be excusable or justifiable. None of such circumstances and conditions exist in this case as it relates to justifiable homicide but you may consider evidence under this instruction if the homicide was excusable as to Count II only. In this case such term shall include the defense of accident.

While this instruction is not ideal, it was adequate to allow the defendant to argue to the jury his theories of accidental homicide.

The judgment and sentence of the trial court is reversed, and the cause is remanded for a new trial consistent with the opinion of this court.

HAMILTON, C.J., ROSELLINI, HUNTER, HALE, NEILL, STAFFORD, WRIGHT, and UTTER, JJ., concur.