[No. 1599-1.    Division One—Panel 1.    March 5, 1973.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM HENRY THOMAS, *Appellant.*

*John M. Darrah* and *John A. Strait,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Brendan D. Lynch, Deputy,* for respondent.

JAMES, J.—Defendant William Henry Thomas was convicted of murder in the second degree. At trial his sole defense was "criminal insanity." RCW 10.76.010. On appeal his sole assignment of error concerns the trial judge's instruction which defined his burden in proving his defense. The instruction in pertinent part is as follows:

> If the defendant is to be acquitted upon his plea of mental irresponsibility or insanity, the *burden of proof is on the defense to satisfy you* by a preponderance of the evidence that at the time the alleged acts were said to have been committed, his mind was diseased to such an extent that he was *unable to perceive the nature and quality of the act* with which he is charged, *and* was *unable to tell right from wrong* with reference to the particular act charged.

(Italics ours.) Instruction No. 22.

Thomas' argument may be summarized as follows: the evolutionary development of the humanitarian concept that insanity should afford immunity from responsibility for criminal acts has resulted in several "rules" or tests which define "criminal" insanity. The Washington Supreme Court has consistently rejected any "irresistible impulse" test and has consistently reiterated its "adherence" to the so-called *"M'Naghten"* rule. The "true" *M'Naghten* rule, according to Thomas, affords an accused *two* avenues to escape conviction in a criminal prosecution: (1) he can establish that his condition of mind was such that he did not know the nature and quality of his act, *or* (2) he can establish that he did not know that his act was wrong. Thomas maintains that the Washington Supreme Court has approved of at least three different formulations of the *M'Naghten* test: that one is a correct statement and affords an accused the two avenues of escape; that a second formulation affords an accused only one way to prove his insanity—that he did not know right from wrong; but that the third formulation requires an accused to prove *both* that he did not know the

nature and quality of his act *and* that he did not know that it was wrong.

Thomas asserts that as originally articulated, the two conditions of mind which would "establish a defense on the ground of insanity" were described *disjunctively*.[1] By instruction No. 22, Thomas was burdened with proving *both* that he "was unable to perceive the nature and quality" of his homicidal act *and* that he "was unable to tell right from wrong with reference to his act."

Thomas did not except to instruction No. 22, but on appeal he claims that because he was not afforded the benefit of the original and true *M'Naghten* test, he was deprived of due process of law; that instruction No. 22 effectively denied him his right to trial by jury; that the confused and standardless status of the *M'Naghten* rule in Washington resulted in a denial to him of the effective assistance of counsel; that his right to equal protection of law was violated because of the arbitrary classes created by Washington's various formulations of the *M'Naghten* rule; and that to the extent that he was convicted as a result of an instruction which defined a lesser standard of insanity than *M'Naghten,* he has been subjected to cruel and unusual punishment—all in violation of his constitutional rights.

▮ Our review of the many Washington cases which have considered the defense of insanity discloses that most are concerned with the propriety of the "knowledge of

[1]As a sequel to the trial of Daniel M'Naghten and in response to a demand by the House of Lords, Chief Justice Tindal, speaking for 15 common-law justices, defined an accused's burden in establishing the defense of insanity. His reply has become the official statement of the original *M'Naghten* rule and is as follows:

> [T]he jurors ought to be told in all cases that every man is to be presumed to be sane, and to possess a sufficient degree of reason to be responsible for his crimes, until the contrary be proved to their satisfaction; and that to establish a defence on the ground of insanity, it must be clearly proved that, at the time of the committing of the act, the party accused was labouring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong.

Daniel M'Naghten's Case, 8 Eng. Rep. 718, 722 (1843).

right from wrong" test as opposed to an "irresistible impulse" test. A critical reading of the Washington cases does not, however, support Thomas' assertion that the court has been inconsistent in its treatment of *M'Naghten's* conception of mindlessness. In the cases cited by Thomas,[2] the court did not approve instructions offering the two exculpatory conditions of mind in the disjunctive.

However, as pointed out by Professor A. Morris, *Criminal Insanity*, 43 Wash. L. Rev. 583 (1968), the en banc decision of *State v. Collins*, 50 Wn.2d 740, 750, 314 P.2d 660 (1957), unequivocally, though erroneously, interprets the original *M'Naghten* rule to require a defendant to prove both "that he did not have the mental capacity to distinguish between right and wrong with reference to the act complained of," *and* "that he did not have the mental capacity to know the nature and quality of his act." *Collins'* reading of the *M'Naghten* rule is expressly approved in *State v. Cogswell*, 54 Wn.2d 240, 247, 339 P.2d 465 (1959).

> We point out that instruction No. 24 is not a complete statement of the "right-and-wrong test" as adopted in this jurisdiction: The instruction does not require defendant to prove, in support of his defense of insanity or mental irresponsibility, that "he did not have the mental capacity to know the nature and quality of his act."
> This court said in *State v. Collins, supra*:
> "The instructions given, in so far as they did not accurately state the M'Naghten rule, were favorable and not prejudicial to the defendant, in that they omitted one of the elements that the defendant could have been required to prove in order to establish his defense of mental irresponsibility."

The en banc decision of *State v. White*, 60 Wn.2d 551, 374 P.2d 942 (1962) cites *State v. Collins, supra,* as authority for Washington's adherence to *M'Naghten*, but sees capabil-

---

[2]*State v. Quinlivan*, 81 Wn.2d 124, 499 P.2d 1268 (1972); *Seattle v. Hill*, 72 Wn.2d 786, 435 P.2d 692 (1967); *State v. Putzell*, 40 Wn.2d 174, 242 P.2d 180 (1952); *State v. Maish*, 29 Wn.2d 52, 185 P.2d 486, 173 A.L.R. 382 (1947); *State v. Long*, 163 Wash. 607, 1 P.2d 844 (1931); *State v. Nicholson*, 1 Wn. App. 853, 466 P.2d 181 (1970).

ity of understanding the nature and quality of the act to be *inherent* in the ability to distinguish right from wrong.

The question before us is whether we, as the majority of jurisdictions, should refuse to extend absolute immunity from criminal responsibility to persons who, although capable of understanding the nature and quality of the acts (the ability to distinguish between right and wrong), are unable to control their own behavior as a result of mental disease or defect.

(Footnote omitted.) *State v. White, supra* at 585.

The en banc decision of *State v. Tyler,* 77 Wn.2d 726, 740, 466 P.2d 120 (1970) cites *State v. White* as authority for the statement that:

The M'Naghten Rule in this state describes insanity or mental irresponsibility as a disease or mental condition affecting the mind to an extent that, at the time the crime is alleged to have been committed, the mind of the accused is so diseased or affected that he is unable to perceive the moral qualities of the act with which he is charged *and* is unable to tell right from wrong with reference to the particular act charged.

(Italics ours.)

In *State v. Reece,* 79 Wn.2d 453, 486 P.2d 1088 (1971), *State v. White* is similarly interpreted, and as recently as August 10, 1972, the Washington Supreme Court has reiterated its adherence to its formulation of the rule:

A majority of this court has consistently held that the so-called M'Naghten rule is the proper test for insanity in this state. *State v. Reece,* 79 Wn.2d 453, 486 P.2d 1088 (1971); *Seattle v. Hill,* 72 Wn.2d 786, 435 P.2d 692 (1967); *State v. Collins,* 50 Wn.2d 740, 314 P.2d 660 (1957). Under this test the jury is properly instructed to ask itself the following question:

Is the mind of the accused so diseased or affected at the time of the commission of the act charged that he is unable to perceive the moral qualities of the act with which he is charged *and* is unable to tell right from wrong with reference to the particular acts charged. [*State v. Reece, supra* at 454.]

(Italics ours.) *State v. Quinlivan,* 81 Wn.2d 124, 127, 499 P.2d 1268 (1972).

In support of his contention that the failure to instruct in terms of the "true" *M'Naghten* rule is a denial of due process, Thomas relies upon *State v. Strasburg,* 60 Wash. 106, 110 P. 1020 (1910) and *Leland v. Oregon,* 343 U.S. 790, 96 L. Ed. 1302, 72 S. Ct. 1002 (1952). We view neither case as supportive of Thomas' contention. *Strasburg* holds at page 121 that our constitution's "due process clause" prohibits the legislature from "preventing one accused of crime from invoking the defense of his insanity at the time of committing the act charged, and offering evidence thereof before the jury." But *Strasburg* does not consider the *M'Naghten* rule nor define any minimum insanity test. *Leland* recognizes that the *M'Naghten* rule is followed in a majority of the states, but no minimum formulation of the *M'Naghten* test is approved.

Significantly, however, *Leland* considers *M'Naghten* to be a "right from wrong" test:

> Knowledge of right and wrong is the exclusive test of criminal responsibility in a majority of American jurisdictions. The science of psychiatry has made tremendous strides since that test was laid down in *M'Naghten's Case,* but the progress of science has not reached a point where its learning would compel us to require the states to eliminate the right and wrong test from their criminal law.

(Footnotes omitted.) *Leland v. Oregon, supra* at 800.

Likewise, the common thread running through all of the Washington cases which have considered the insanity defense is that the critical issue is the accused's ability to know right from wrong.

> When a jury of laymen are invited to go further than to answer the question. [*Sic*] Had the accused sufficient capacity at the time of committing the act to distinguish between right and wrong with reference to it, they are invited to enter the realm of speculation where even the opinion of the alienist is met by like opinion, and he can find no guide to clear his doubt or direct him toward a truthful verdict.

*State v. Craig,* 52 Wash. 66, 71, 100 P. 167 (1909). *State v.*

*White, supra,* demonstrates that the Washington Supreme Court considers that an accused's proof that he did not know the nature and quality of his act is a means of proving that he did not know it was wrong. Washington is not unique in this respect.

> The phrase "Nature and quality of the act" is sometimes omitted completely from the charge to the jury. More often, it is either stated to the jury without explanation or treated as adding nothing to the requirement that the accused know his act was wrong. The underlying theory is that if the accused did not know the nature and quality of his act, he would have been incapable of knowing it was wrong.

(Footnote omitted.) A. Goldstein, *The Insanity Defense* 50 (1967).

Critical analysis of *M'Naghten* and its various interpretations reveals a high degree of judicial ambivalence in the treatment of the rule's conception of insanity.

> Some States . . . cite the "nature and quality" test *disjunctively* with the right-and-wrong rule, some *conjunctively.* Many decisions jumble these all together, throwing in other scraps of opinion and dictum for good measure; and some trial judges, in States where, according to the decisions of the local supreme courts, the right-and-wrong test *only* is the rule, have cheerfully included "requested instructions" to juries to the effect that "irresistible impulse", "overmastery of the will", etc., etc.,—*even where knowledge of right and wrong exists,*—excuses from responsibility. Moreover, appellate courts, in reviewing such cases, have sometimes either closed an eye to this inconsistency between the law as they solemnly announced it in the books, and the law as applied by trial judges in action; or they have noticed it, merely commenting that the instructions given at the trial were very favorable to the accused, etc.

S. Glueck, *Mental Disorder & the Criminal Law* 217 (1966 reprint).

Washington's resolution of the *M'Naghten* dilemma has pragmatic virtue. It requires jurors to rely upon common experience and to exercise common sense.

For, as Lord Cooper said, when asked whether it was not desirable to have some yardstick to guide the jury; 'I do not think so, for this reason. . . . However much you charge a jury as to the M'Naghten Rules or any other test, the question they would put to themselves when they retire is—Is the man mad or is he not?' The Royal Commission on Capital Punishment had little doubt that most English juries do the same.

(Footnote omitted.) F. Whitlock, *Criminal Responsibility & Mental Illness* 52 (1963).

Instruction No. 22 violated none of Thomas' constitutional rights. It may not be an accurate statement of the original *M'Naghten* rule, but it is a correct definition of the burden of proof in Washington upon a plea of criminal insanity.

Affirmed.

SWANSON, C.J., and FARRIS, J., concur.

Petition for rehearing denied June 6, 1973.

Review denied by Supreme Court July 24, 1973.