[No. 1285-1. Division One—Panel 2. July 9, 1973.]

THE STATE OF WASHINGTON, *Respondent,* v. GARY GENE GRANT, *Appellant.*

*Wesley G. Hohlbein* and *James V. Grubb*, for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Michael T. DiJulio, Deputy,* for respondent.

HOROWITZ, J.—Defendant was convicted and sentenced, after jury trial, on four counts of first-degree murder, the life sentences to be served consecutively. Defendant appeals.

The facts as the jury could have found them are briefly these. On December 15, 1969, about 7:15 p.m., Carol Adele Erickson, age 19, was walking home from the Renton Municipal Library along a dirt road which runs parallel to the Cedar River. While so walking, defendant attacked her by plunging a hunting knife into her back, causing her death. He dragged Miss Erickson into the bushes nearby and raped her. In addition, he wrapped her shoelaces around her neck leaving constriction marks. The above facts were established at trial through the testimony of investigators at the crime scene, the autopsy surgeon, and the confessions of the defendant on April 30, 1971.

On September 20, 1970 at approximately 4:50 p.m.,

Joanne Marie Zulauf, whose age according to the state was 17, left her home to take a short walk before dinner. About 12:20 a.m. on September 22, her nude body was found in a heavily-wooded area. She had been struck in the back of the head with a rock-like object; however, she died as a result of asphyxia caused by strangulation. Miss Zulauf's watch was missing from her body. These facts were established through the testimony of crime scene investigators, the autopsy surgeon, and persons who had seen Miss Zulauf prior to her disappearance. The evidence at trial on this count against the defendant consisted of his oral confession to Detective Gillespie of the Seattle Police Department and his written confession to Detective Sergeant George Helland of the King County sheriff's office on April 30, 1971. A tape recording of Sergeant Helland's entire interview with defendant was admitted into evidence and played before the jury. The state also presented circumstantial evidence that defendant committed the murder. The defendant's former girl friend testified that defendant gave a watch to her as a birthday present on September 26, 1970. The watch was identified as belonging to Miss Zulauf.

On April 20, 1971, two 6-year-old boys, Scott Andrews and Bradley Lyons, wandered away from their homes in Renton. The boys were last seen playing behind the Lyons' residence at approximately 11:15 a.m. on the morning of the 20th. After extensive search, the bodies of the two boys were discovered on the evening of April 22, 1971 in a heavily-wooded area about 2 miles from their homes. The boys' clothing, as well as ferns and leaves, had been strewn over the bodies, leaving only the heads visible. There were three stab wounds in the left chest area of Scott Andrews, two of which were fatal as they penetrated his body approximately $4\frac{1}{2}$ inches. The body of Bradley Lyons was found next to Scott Andrews. Bradley Lyons died as a result of asphyxiation caused by strangulation by ligature. Both boys had contusions, indicating they had been beaten about the face. The crime scene investigators took plaster casts of

two footprints at the scene, which were later matched with the tennis shoes worn by defendant at the time of his arrest.

On April 28, 1971, search teams found a hunting knife located approximately 156 feet from where the two boys were found. This knife had blood on the blade matching the blood type of Scott Andrews. Inscribed on the handle of the knife was the name "Tom Evenson." Mr. Evenson testified that the knife had been sold to Jerry Triplett. A Jim Monger testified that he acquired the knife from Jerry Triplett and last saw it in defendant's possession. As a result of their interviews with Monger and Evenson on April 29 and 30, 1971, Renton police detectives Hume and Phelan contacted defendant at his home in Renton on April 30, 1971. Detectives Hume and Phelan and Detectives Gillespie and Helland testified extensively concerning their interviews with defendant on April 30, 1971.

Defendant makes eight assignments of error, argued extensively. After consideration of the contentions advanced, we find no reversible error. We confine our discussion to the critical arguments advanced, finding it unnecessary to comment on many of the cases cited.

In defendant's first two assignments of error defendant contends the court erred in denying his motion to dismiss the charges against defendant on the ground that police officers secretly and illegally monitored and taped a conversation of defendant with his attorney, Mr. Robert Kroum, on May 1, 1971. Defendant also contends the court erred in refusing to suppress the "bugged conversation between defendant and Detective Hume . . . and all evidence which might have been gained" thereby, including defendant's conversation. At the CrR 101.20W hearing it appeared that Detective Hume interviewed defendant at the police station on April 30, 1971 concerning defendant's involvement with the killings. That conversation was secretly monitored and taped by another police officer without the knowledge or consent of the defendant or the detective.

The evidence also showed that on May 1, 1971, defendant was interviewed by Mr. Kroum, his attorney, in the presence of defendant's father, all three of whom were then at the Renton police station. On this occasion also a Renton police officer listened in and made a tape recording of the conversation without the knowledge and consent of any of the three persons present. After reviewing the evidence, including the conversations described, the court entered detailed findings and conclusions. In substance, he ruled:

> [T]hat all written and oral statements are admissible up to and including the statement taken by Detective Helland. That the statements taken subsequent to that, after 9:00 a.m. on May 1st, are inadmissible. With regard to those statements, the State has failed to meet its burden of proving that the defendant had an opportunity to exercise his constitutional rights with regard to those statements.

The court also took steps to eliminate any possible prejudice to the defendant by the illegal invasion of his rights. He required the state to file a summary of evidence it proposed to offer at trial and gave the defendant an opportunity to object to that evidence prior to trial. The state filed its required summary on July 6, 1971. On August 2, 1971, defendant filed his objections and obtained rulings thereon prior to trial. The state also made a motion in limine that the court rule inadmissible confessions made by one John Arthur Chance to police officers that he killed the two boys with whose murder defendant was charged. The trial court granted the state's motion.

In order to consider the two assignments of error dealing with the illegal monitoring of conversations with the defendant, we first consider the impact of RCW 9.73. RCW 9.73.030 provides:

> Except as otherwise provided in this chapter, it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, record or divulge any:
>
> . . .
>
> (2) *Private conversation,* by any device electronic or

otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation.

(Italics ours.) RCW 9.73.050 provides:

Any information obtained in violation of RCW 9.73.030 or pursuant to any order issued under the provisions of RCW 9.73.040 shall be inadmissible in any civil or criminal case in all courts of general or limited jurisdiction in this state, except with the permission of the person whose rights have been violated in an action brought for damages under the provisions of RCW 9.73.030 through 9.73 .080, or in a criminal action in which the defendant is charged with a crime, the commission of which would jeopardize national security.

RCW 9.73.030(2) seeks to prevent encroachment upon the privacy of the parties to a conversation. The words "private conversation" contained in RCW 9.73.030(2) are not defined and have not heretofore been construed in any published opinion in this state. That language is not contained in Federal Communications Act § 605 (47 U.S.C. § 605), which corresponds somewhat to our statute. In construing the statutory words "private conversation," we seek to best fulfill the purpose of the statute. *Roza Irrigation Dist. v. State,* 80 Wn.2d 633, 497 P.2d 166 (1972); *State v. Lee,* 62 Wn.2d 228, 382 P.2d 491 (1963). In considering that purpose, we note the phrase "private conversation" is all-embracing and is broad enough to include a confidential or privileged conversation, and one protected against disclosure under the Fourth Amendment. To construe the words "private conversation" narrowly and grudgingly would unnecessarily fail to give full effect to the legislative purpose to protect the freedom of people to hold conversations intended only for the ears of the participants. Both the conversation held by the defendant with his attorney and the conversation held by the defendant with Detective Hume are each "private conversations" entitled to the protection of RCW 9.73.030 and 9.73.050.

The recording and the transmitting of the conver-

sation between the defendant and his attorney also violated defendant's Sixth Amendment rights to effective counsel. The violation of RCW 9.73 renders inadmissible in a civil or criminal case information obtained in violation of RCW 9.73.030. The sanction for the violation of Sixth Amendment rights, in case of prejudice, results in dismissal of the charge. *State v. Cory*, 62 Wn.2d 371, 382 P.2d 1019, 5 A.L.R.3d 1352 (1963). If, however, the state shows that the defendant has not been prejudiced by the violation, dismissal will not be required. Thus, in *State v. Baker*, 78 Wn.2d 327, 474 P.2d 254 (1970), the court said in explaining when dismissal would be required:

> Dismissal of charges is an extraordinary remedy. It is available only when there has been prejudice to the rights of the accused which materially affected the rights of the accused to a fair trial and that prejudice cannot be remedied by granting a new trial. . . . In *Cory* we assumed that the prosecutor had taken advantage of a simple means of "obtaining evidence and knowledge of the defendant's trial strategy" because there was no way of determining exactly what had been overheard. The basis for that assumption is not present in the instant case. The report of the psychiatrist is in evidence. This court is able to ascertain what, if any, prejudice resulted from the prosecutor's obtaining a copy of the report. As stated previously, prejudice cannot adhere when there is no nexus between official misconduct and a right of the accused.

*State v. Baker, supra* at 332-33.

 The means adopted by the court to insure that the evidence against the defendant was not derived from tainted sources, whether by virtue of RCW 9.73 or by virtue of the Sixth Amendment, demonstrated an absence of prejudice to the defendant. Error without prejudice is not reversible. We find no reversible error in the court's refusal to dismiss the charges against defendant. The court accomplished his purpose by his ruling at the pretrial hearing. He excluded the illegal tape recording of the April 30, 1971 conversation between defendant and Detective Hume, as he was required to do under RCW 9.73.050. It was defendant

not the state, that had that tape recording played to the jury after the court had first excluded it. Defendant cannot complain of self-invited error. The only item of evidence which could conceivably be traced to the defendant's conversations prior to May 1, 1971 was concerned with Miss Zulauf's watch. However, evidence concerning the watch and defendant's gift of the watch to defendant's former girl friend came from an independent source and was therefore admissible. *State v. O'Bremski*, 70 Wn.2d 425, 423 P.2d 530 (1967). *See People v. Carter*, 26 Cal. App. 3d 862, 103 Cal. Rptr. 327 (1972). Our conclusion concerning the absence of evidence of actual prejudice is supported by the following statement in defendant's brief on appeal:

> All the testimony on the pretrial hearing on the bugged conversation suggested that the prosecutors involved in the case had no access to the bugged information, and that the Renton Police received no leads to incriminating information from the bugging.

■ Defendant contends the court erred in permitting Detective Hume himself to testify to the illegally-monitored and taped conversation with the defendant on April 30, 1971. He contends that RCW 9.73.050 bars such testimony. But for the illegal monitoring, with which Detective Hume had nothing to do, he could have testified to the conversation because we later find that the conversations were voluntarily held after proper warning of defendant's *Miranda* rights. RCW 9.73.050 does not purport to prohibit the admissibility of conversations unless information obtained therefrom is "in violation of RCW 9.73.030." The instant case does not involve an objection to the testimony by the overhearing police officers concerning the illegally-monitored and taped conversation. This case is one involving testimony to the objected-to conversation from one of the parties to that conversation. Had Detective Hume been a party to the illegal recording and taping, a different question would be presented. *Compare United States v. White*, 401 U.S. 745, 28 L. Ed. 2d 453, 91 S. Ct. 1122 (1971).

■ Defendant contends the court erred in refusing to

admit in evidence John Arthur Chance's confessions to the Renton police officers that he had killed the two boys with whose murder defendant was later charged. Several grounds of admissibility are urged. First, defendant contends the Chance confessions were admissible under an exception to the hearsay rule which permits confessions against the penal interest of the declarant to be received. Case law is divided on whether a declaration against penal interest, as distinguished from proprietary interest, is a proper exception to the hearsay rule. The matter has not been determined in Washington. *State v. Garrison,* 71 Wn.2d 312, 427 P.2d 1012 (1967). We need not resolve that question here.

Although the rule has been criticized, it is generally held that a declaration against interest, penal or proprietary, is admissible only after a showing that the declarant is unavailable as a witness at trial. C. McCormick, *Evidence* § 253 (2d ed. E. Cleary 1972); 29 Am. Jur. 2d *Evidence* § 618 (1967). *See* Comment, *Evidence: The Unavailability Requirement of Declaration Against Interest Hearsay,* 55 Iowa L. Rev. 477 (1969). The record is clear that John Arthur Chance was available as a witness had he been called. Defendant's counsel informed the court they had talked to Chance in the presence of the latter's own attorney and that "[a]t that time it was established that Mr. Chance is physically available to testify and can be reached through Mr. Frank Sullivan . . ."

Defendant's counsel stated that if Chance was called, they believed he would testify that his prior admissions of guilt were based upon coercion and duress. They further stated that "there is no indication at this time that any waiver of his Fifth Amendment rights will be made." On appeal, counsel for defendant argues that, as a practical matter, Chance was unavailable as a witness, first because of the "indication" that he would refuse to testify on the ground of possible self-incrimination, and second, because he was insane. Counsel further argues that Chance's statements should have been admitted for the purpose of im-

peachment in the event Chance testified denying any connection with the murders. However, Chance was never called as a witness. The trial court was not required to determine solely on the basis of the statements of defendant's counsel that Chance was incompetent to testify, he being physically available to appear. *See State v. Wyse,* 71 Wn.2d 434, 429 P.2d 121 (1967); *State v. Bishop,* 51 Wn.2d 884, 322 P.2d 883 (1958); *McCutcheon v. Brownfield,* 2 Wn. App. 348, 467 P.2d 868 (1970). Likewise, the court was not required to determine solely on the basis of statements of defendant's counsel that Chance would claim his Fifth Amendment rights not to testify. Nor was it necessary for the court to determine to what Chance would testify if he was called.

Further, in the absence of an available witness subject to cross-examination and to the protection of an oath, there is a substantial risk that the declarations will be unreliable. In the instant case the court, after hearing the tapes of John Arthur Chance's conversations with the police officers, concluded that Chance's statements were unreliable, and properly excluded them.

Defendant cites *Chambers v. Mississippi,* 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973), to support his claim that Chance's confessions should have been admitted. That case is distinguishable. It does not involve, *inter alia,* the problem here, namely, the admissibility in evidence of out-of-court confessions of a witness available to testify but not produced.

Defendant contends Chance's confession was admissible to show the state of mind of the police officers in obtaining the Chance confession. It is argued that such evidence would be relevant here "to show a possible tendency toward intentionally overlooking constitutional guarantees . . ." Defendant also contends Chance's confession would be relevant to show the police officers' excessive zeal and improper actions in interviewing defendant and extracting a confession from him by the use of improper methods similar to those used in obtaining a confession

from Chance. Questions of relevancy concerning evidence otherwise admissible are matters within the discretion of the trial court, subject to review for manifest abuse of discretion. *State v. Schrager,* 74 Wn.2d 75, 442 P.2d 1004 (1968); *Chase v. Beard,* 55 Wn.2d 58, 346 P.2d 315 (1959); *State v. Rolax,* 7 Wn. App. 937, 503 P.2d 1093 (1972). We find no such abuse here.

Defendant assigns error to the admission of testimony by Richard Krantz that he gave defendant a ride home from a place near the site where Joanne Zulauf was killed about 12 hours after the killing. Defendant claims the testimony was irrelevant and prejudicial. He argues that this is true whether the test of relevance is that a desired inference is more probable than not, or that the inference is as probable as any other inference. The trial court, however, has discretion in permitting or excluding otherwise admissible evidence objected to on the grounds of relevancy. *State v. Schrager, supra; State v. Rolax, supra.* We find no abuse of discretion.

▮ Defendant contends the trial court erred in admitting his confessions. It is claimed that they were obtained under inherently oppressive circumstances from defendant who was of low grade intelligence and who was in custody for an excessive period of time. Degree of intelligence and length of custody alone are not sufficient to make a confession involuntary; they are just two elements to be considered in determining the totality of the circumstances surrounding the confession. *See Lunnermon v. Peyton,* 310 F. Supp. 323 (W.D. Va. 1970), *aff'd,* 440 F.2d 774 (4th Cir. 1971); *State v. Edwards,* 257 La. 707, 243 So. 2d 806 (1971); *Nash v. State,* 477 S.W.2d 557 (Tex. Crim. App. 1972); Annot., 69 A.L.R.2d 348 (1960). After a painstaking review of the testimony given at a CrR 101.20W hearing, the court held the confessions competent evidence and admissible. The court acted within its powers.

▮ Defendant finally contends the court erred in denying a jury instruction proposed by him on insanity said to embody the *"Durham"* rule rather than the *"M'Naghten"*

rule. Defendant interposed no insanity plea and offered no proposed instruction defining insanity. Appellant does not set forth any proposed instruction in his brief as required by CAROA 43. Possibly what defendant intends by the assignment of error is a claim that the court below erroneously denied his motion to substitute the *"Durham"* test of insanity for the *"M'Naghten"* test. If this is what he intended we find no error. The so-called *"Durham"* test of insanity as set forth in *Durham v. United States,* 214 F.2d 862 (D.C. Cir. 1954), has been abandoned by the court that adopted it. *United States v. Brawner,* 471 F.2d 969 (D.C. Cir. 1972). In *State v. Collins,* 50 Wn.2d 740, 314 P.2d 660 (1957), the Supreme Court examined the *Durham* rule at length and refused to follow it. Since then, the appellate courts of the state have reaffirmed the *M'Naghten* rule as the correct rule to be applied in insanity cases. *State v. Ferrick,* 81 Wn.2d 942, 506 P.2d 860 (1973); *State v. Boggs,* 80 Wn.2d 427, 495 P.2d 321 (1972); *State v. Reece,* 79 Wn.2d 453, 486 P.2d 1088 (1971); *State v. Thomas,* 8 Wn. App. 495, 507 P.2d 153 (1973); *State v. Myers,* 6 Wn. App. 557, 494 P.2d 1015 (1972).

The judgment is affirmed.

WILLIAMS and CALLOW, JJ., concur.

Petition for rehearing denied September 19, 1973.

Review denied by Supreme Court November 20, 1973.