[No. 55615-6. En Banc. October 18, 1990.]

*In the Matter of the Personal Restraint of*
MITCHELL E. RUPE, *Petitioner.*

*Allen & Hansen, P.S., David Allen, Richard Hansen,* and *Donald Roistacher,* for petitioner.

*Patrick D. Sutherland, Prosecuting Attorney,* and *Gary R. Tabor, Chief Criminal Deputy,* for respondent.

BRACHTENBACH, J.—In this capital murder case personal restraint petitioner Mitchell E. Rupe, who was sentenced to death, argues that a jury instruction directing the jury not to permit sympathy to influence it during sentencing deliberations was erroneous and requires a new penalty phase trial. We deny the petition.

Petitioner was convicted on two counts of first degree aggravated murder in the shooting deaths of two Olympia, Washington, bank tellers during the course of an armed robbery, and two counts of first degree robbery.

In June 1984 this court handed down the opinion in *State v. Rupe,* 101 Wn.2d 664, 683 P.2d 571 (1984).[1] We affirmed petitioner's convictions, but reversed the sentence of death on the ground that evidence of petitioner's gun collection was erroneously admitted in the penalty phase of the trial. On remand for a second sentencing proceeding, petitioner was again sentenced to death. In response to the statutorily mandated question which the sentencing jury must answer under this state's capital sentencing statutes, the jury unanimously determined that there existed no sufficient mitigating circumstances to merit leniency. RCW 10.95.060(4). Petitioner's second sentence of death was upheld by this court in *State v. Rupe,* 108 Wn.2d 734, 743 P.2d 210 (1987), *cert. denied,* 486 U.S. 1061 (1988).[2]

Thereafter, petitioner filed a personal restraint petition with this court. In his brief in support of his personal restraint petition, petitioner raised a number of issues

---

[1]Appended to this opinion is a summary of issues addressed in *State v. Rupe,* 101 Wn.2d 664, 683 P.2d 571 (1984). See Appendix A.

[2]Appended to this opinion is a summary of issues addressed in *State v. Rupe,* 108 Wn.2d 734, 743 P.2d 210 (1987), *cert. denied,* 486 U.S. 1061 (1988). See Appendix B.

relating to the second sentencing procedure. He argued that defense counsel never opened the door to the deputy prosecutor's rebuttal cross examination regarding the possibility of commutation, and that admission of evidence regarding the possibility of commutation constitutes reversible error.[3] Petitioner also argued that defense counsel was ineffective in that he opened the door to rebuttal evidence regarding the possibility of commutation; counsel was ineffective in that he submitted an instruction directing the jury to disregard sympathy and in not objecting to the giving of a no-sympathy instruction; counsel was ineffective in not introducing mitigating psychological testimony at the sentencing proceeding; and counsel was ineffective in not submitting a jury instruction informing the jury that there is a presumption that a defendant merits leniency. Petitioner additionally argued that Washington's death penalty statute creates a mandatory presumption of death.

In an order filed March 30, 1990, we denied the petition as to all issues except the propriety of giving a no-sympathy instruction to the jury. As to that issue, the court set oral argument, and directed the parties to provide additional briefing limited to the no-sympathy instruction issue. The court also directed the parties to discuss the United States Supreme Court's opinion in *Saffle v. Parks*, ___ U.S. ___, 108 L. Ed. 2d 415, 110 S. Ct. 1257 (1990). Following further briefing and oral argument, we now address petitioner's remaining issue.

Petitioner's challenge is based upon the trial court's giving the following instruction to the jury:

---

[3]In *State v. Rupe,* 108 Wn.2d 734, 758–62, 743 P.2d 210 (1987), we examined this issue and determined that, when defense counsel asked petitioner on direct examination whether "at best, [he would] be looking at [prison] for the rest of [his] life" and petitioner responded "[l]ife without parole", the deputy prosecutor's cross examination about the possibility of commutation was properly allowed in rebuttal of petitioner's mitigating evidence.

. . . .
You are officers of the Court and must act impartially and with an earnest desire to determine and declare the proper verdict. Throughout your deliberations you will permit neither sympathy nor prejudice to influence you.

Instruction 1, Clerk's Papers, at 397 (given at close of trial). Substantially the same instruction was given orally at the beginning of trial. Verbatim Report of Proceedings, at 2350.

Petitioner maintains that the "anti–sympathy" language of the introductory jury instruction conflicted with the jury instructions defining the role of mitigating evidence. He argues that the decision in *Saffle v. Parks, supra,* does not decide this issue or, if it is applicable, it invalidates the no–sympathy instruction given here. He also relies upon what he terms "clear Washington precedent."

Petitioner claims that the decision in *Saffle v. Parks, supra,* does not decide the issue in this case. To understand the impact of that opinion, we begin with the premise that the State cannot bar the defense from presenting relevant mitigating evidence during the penalty phase of a capital trial, and the jury may not be limited in its consideration of such evidence. *Lockett v. Ohio,* 438 U.S. 586, 604, 57 L. Ed. 2d 973, 98 S. Ct. 2954 (1978); *Eddings v. Oklahoma,* 455 U.S. 104, 113–15, 71 L. Ed. 2d 1, 102 S. Ct. 869 (1982). The sentencer may consider "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett,* at 604. The holdings of *Lockett* and *Eddings* are founded on the Eighth and Fourteenth Amendments' requirement of individualized sentencing in capital cases. *Lockett,* at 605.

In *California v. Brown,* 479 U.S. 538, 93 L. Ed. 2d 934, 107 S. Ct. 837 (1987), the Court reviewed a decision of the California State Supreme Court holding that a no–sympathy instruction violated the Eighth and Fourteenth Amendments. The instruction at issue informed the jurors that they "'must not be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling' during the penalty phase of a capital murder trial".

*California v. Brown, supra,* at 539. The California court reasoned that the instruction diverted the jury from its constitutional duty to consider any sympathetic aspect of the defendant's character or record whether or not related to the offense for which the defendant was on trial. *People v. Brown,* 40 Cal. 3d 512, 537, 726 P.2d 516, 230 Cal. Rptr. 834 (1985).

The United States Supreme Court reversed, holding that the instruction was not violative of the federal constitution. The Court reasoned that a reasonable juror focusing on the phrase "mere sympathy" would be likely to "interpret the phrase as an admonition to ignore emotional responses that are not rooted in the aggravating and mitigating evidence introduced during the penalty phase." *California v. Brown, supra* at 542 (hereafter *Brown*). The Court noted that the instruction was given at the end of the penalty phase, after defendant had produced 13 witnesses in his favor, and said that rather than interpreting the instruction as defendant urged and the California court did, it thought that

> a reasonable juror would reject that interpretation, and instead understand the instruction not to rely on "mere sympathy" as a directive to ignore only the sort of sympathy that would be totally divorced from the evidence adduced during the penalty phase.

*Brown,* at 542. By prohibiting the jury from consideration of factors not presented at trial and irrelevant to the issues, the Court said, the instruction served the useful purpose of cautioning the jury not to rely on extraneous emotional factors which would be more likely to turn the jury against a capital defendant than for him. *Brown,* at 543. Also, the instruction "fosters the Eighth Amendment's 'need for reliability in the determination that death is the appropriate punishment in a specific case,'" and it helps ensure the "availability of meaningful judicial review" based on record evidence—another safeguard improving the reliability of the sentencing process. *Brown,* at 543.

Justice O'Connor concurred, writing "the sentence imposed at the penalty stage should reflect a reasoned *moral* response to the defendant's background, character,

and crime rather than mere sympathy or emotion." *Brown,* at 545 (O'Connor, J., concurring).

The year after *Brown* was handed down, the Tenth Circuit addressed a petition for a writ of habeas corpus, which, among other things, challenged the following instruction given to the jury during the penalty phase of a capital trial: "You must avoid any influence of sympathy, sentiment, passion, prejudice or other arbitrary factor when imposing sentence". *Parks v. Brown,* 860 F.2d 1545, 1548 (10th Cir. 1988), *cert. granted,* 490 U.S. 1034, 104 L. Ed. 2d 402, 109 S. Ct. 1930 (1989). The Tenth Circuit held the instruction was unconstitutional, and distinguished *Brown* on the basis that the instruction there concerned "mere" sympathy, which, the Tenth Circuit said, was crucial to the Court's decision in *Brown,* while the instruction before it concerned "any . . . sympathy." The court reasoned that the "absolute" anti–sympathy instruction unconstitutionally directed the jury to ignore sympathy which was based on mitigating evidence. The court further reasoned that such an instruction creates a "danger that [defendant's] counsel's plea for mercy and compassion will fall on deaf ears." *Parks v. Brown, supra* at 1556.

The United States Supreme Court granted certiorari, and reversed. *Saffle v. Parks,* __ U.S. __, 108 L. Ed. 2d 415, 110 S. Ct. 1257 (1990) (hereafter *Parks*). The Court concluded the rule which petitioner sought would be a new rule which, under its recent opinions, would not apply retroactively on collateral review because it did not fit within either of two exceptions articulated by the Court. *See Teague v. Lane,* 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989); *Penry v. Lynaugh,* __ U.S. __, 106 L. Ed. 2d 256, 109 S. Ct. 2934 (1989).

In reaching this conclusion, the Court necessarily examined the substantive issue in order to determine whether the rule sought was a new rule. The Court applied a "functional view" of what constitutes a new rule, and stated that its task was to "determine whether a state court considering [petitioner's] claim at the time his conviction became

final would have felt compelled by existing precedent to conclude that the rule [petitioner] seeks was required by the Constitution." *Parks,* 108 L. Ed. 2d at 424. Then the Court reasoned that despite petitioner's reliance on *Eddings* and *Lockett,* those cases "do not speak directly, if at all, to the issue presented here: whether the State may instruct the sentencer to render its decision on the evidence without sympathy." *Parks,* 108 L. Ed. 2d at 425–26. The Court explained that a rule that no–sympathy instructions are unconstitutional relates

> not to *what* mitigating evidence the jury must be permitted to consider in making its sentencing decision, but to *how* it must consider the mitigating evidence. There is a simple and logical difference between rules that govern what factors the jury must be permitted to consider in making its sentencing decision, and rules that govern how the State may guide the jury in considering and weighing those factors in reaching a decision.

*Parks,* 108 L. Ed. 2d at 426. The Court reasoned that petitioner's contention, that the State had unconstitutionally limited the manner in which his mitigating evidence may be considered, is not within the rule of *Lockett* and *Eddings.*

Petitioner argued in *Parks* that the no–sympathy instruction ran afoul of *Lockett* and *Eddings* because jurors who reacted sympathetically to mitigating evidence may interpret the instruction as barring them from considering that evidence. The Court rejected this argument, reasoning that the argument misapprehends the distinction between allowing the jury to consider mitigating evidence and guiding their consideration. *Parks,* 108 L. Ed. 2d at 427. The Court said that "[i]t would be very difficult to reconcile a rule allowing the fate of a defendant to turn on the vagaries of particular jurors' emotional sensitivities with our long–standing recognition that, above all, capital sentencing must be reliable, accurate, and nonarbitrary." *Parks,* 108 L. Ed. 2d at 427. Picking up the language from Justice O'Connor's concurrence in *Brown,* the Court said:

> At the very least, nothing in Lockett and Eddings prevents the State from attempting to ensure reliability and nonarbitrariness by requiring that the jury consider and give effect to

the defendant's mitigating evidence in the form of a "reasoned *moral* response," *Brown,* 479 US, at 545 . . . (emphasis in original), rather than an emotional one. The State must not cut off full and fair consideration of mitigating evidence; but it need not grant the jury the choice to make the sentencing decision according to its own whims or caprice.

*Parks,* 108 L. Ed. 2d at 427–28.

The Court then addressed *Brown.* Petitioner argued that because in *Brown* the Court concluded that it is constitutional to prevent the jury from considering emotions not based upon the evidence, it followed that the jury must be allowed to consider and give effect to emotions which were based on the evidence. The Court rejected this argument, saying that for the same reasons that *Lockett v. Ohio,* 438 U.S. 586, 57 L. Ed. 2d 973, 98 S. Ct. 2954 (1978) and *Eddings v. Oklahoma,* 455 U.S. 104, 71 L. Ed. 2d 1, 102 S. Ct. 869 (1982) did not compel the rule sought by petitioner, it doubted that the inference sought by petitioner followed from *Brown.* In any case, the Court noted that *Brown* was decided after petitioner's conviction, and, in order to obtain the benefit, if any, of *Brown,* petitioner would have to show it did not establish a new rule and in doing so would have to show that *Lockett* and *Eddings* dictated the reasoning, if not the result, in *Brown.* The Court said its discussion made it evident that *Lockett* and *Eddings* did not. *Parks,* 108 L. Ed. 2d at 428.

Technically, as petitioner maintains, the Court's decision in *Parks* is a matter of federal habeas review. The Court held that under principles of retroactivity on collateral review, petitioner was not entitled to relief. While the Court in *Parks* did not expressly approve the instruction given in this case, the analysis in *Brown* and *Parks* together compel the conclusion that the instruction does not violate the Eighth and Fourteenth Amendments.

The rule of *Lockett* and *Eddings* that the defendant be allowed to present any mitigating evidence does not, as the Court in *Parks* made clear, support the proposition that a jury be allowed to determine whether to impose the death sentence based upon an emotional reaction of sympathy

rather than as a result of consideration of defendant's mitigating evidence. As the Court reasoned, any such conclusion would be completely at odds with the recognition that capital sentencing be reliable, accurate, and nonarbitrary.

The United States Supreme Court's seminal cases require the exercise of channeled discretion in imposing the death sentence, and, as the Court stated in *Booth v. Maryland,* 482 U.S. 496, 508, 96 L. Ed. 2d 440, 107 S. Ct. 2529 (1987), "any decision to impose the death sentence must 'be, and appear to be, based on reason rather than caprice or emotion.'" From these premises, the Oregon Supreme Court reasoned:

> Logically, it is completely antithetical to those two basic premises to allow, much less to invite, the jury to make an irrational, emotional capital sentencing decision. The historical pattern of juries according discretionary "mercy" to murderers who were sympathetic because they happened to be white and privileged, at the expense of those who were not sympathetic because they happened to be otherwise, is precisely what *Furman v. Georgia,* 408 US 238, 92 S Ct 2726, 33 L Ed 2d 346 (1972), and its progeny are all about.

*State v. Moen,* 309 Or. 45, 92 n.18, 786 P.2d 111 (1990).

In short, permitting the jury to base its decision on sympathy is incompatible with the constitutional requirement of channeled discretion in death sentencing decisions.

Moreover, we find compelling the reasoning of the United States Supreme Court that meaningful appellate review of death sentences would be seriously hampered if a jury could base its sentencing decision on sympathy. This court is required to review, pursuant to RCW 10.95.130(2), every case where the sentence of death is imposed in order to determine whether there were not sufficient mitigating circumstances warranting leniency, whether the sentence was excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant, and whether the sentence was the result of passion or prejudice. Each of these inquiries would be affected if juries decided death sentences based upon emotion.

With respect to the first inquiry, as noted in *Brown,* at 543, sympathetic considerations could well work against a defendant. If a jury could properly act upon an unfavorable emotional response to defendant, the determination on review as to whether there were insufficient mitigating circumstances to warrant leniency would become a meaningless charade. Similarly, if juries could base sentencing decisions on sympathy, it would be futile to try to compare capital cases for proportionality, because in one instance the defense may successfully appeal to the sympathy of the jury while in another the defense may not, regardless of mitigating evidence submitted in the two cases. Finally, depending upon whether sympathy played for or against a defendant, a sentencing decision could actually be the result of passion or prejudice if sympathy were a proper jury consideration. It would then be senseless to review the case to determine whether the sentence resulted from passion or prejudice.

Thus, sympathy as a jury consideration is, in addition to being inconsistent with constitutionally mandated channeled discretion, also wholly inconsistent with the mandated review this court must give death sentences. As the Court in *Brown* observed, instructing the jury not to rely upon sympathy fosters the Eighth Amendment need for reliability and the availability of meaningful judicial review. *Brown,* at 543.

■ Basically, as the Court in *Parks* reasoned, a key distinction to be made in this case is the distinction between what evidence a defendant must be allowed to present under *Lockett* and *Eddings,* and *how* a jury may be permitted or required to view that evidence. In accord with *Parks* and *Booth,* the jury must reach its decision based upon a reasoned moral response to the evidence. It must consider all mitigating evidence presented by the defendant. It must not, however, be permitted to make its decision on the basis of an emotional response.

The clear majority of courts addressing the issue after *Brown* have agreed that a no–sympathy instruction is not unconstitutional in the penalty phase of a capital case. *See Parks,* 108 L. Ed. 2d at 426, 428 (citing *Byrne v. Butler,* 847 F.2d 1135, 1138–40 (5th Cir. 1988); *People v. Emerson,* 122 Ill. 2d 411, 442–43, 522 N.E.2d 1109, 1122 (1987), *cert. denied,* 488 U.S. 900, 102 L. Ed. 2d 235, 109 S. Ct. 246 (1988); *State v. Ramseur,* 106 N.J. 123, 295–99, 524 A.2d 188, 275–77 (1987); *State v. Steffen,* 31 Ohio St. 3d 111, 125, 509 N.E.2d 383, 396 (1987), *cert. denied,* 485 U.S. 916, 99 L. Ed. 2d 250, 108 S. Ct. 1089 (1988); *State v. Owens,* 293 S.C. 161, 169, 359 S.E.2d 275, 279, *cert. denied,* 484 U.S. 982, 98 L. Ed. 2d 496, 108 S. Ct. 496 (1987); *State v. Porterfield,* 746 S.W.2d 441, 450–51 (Tenn.), *cert. denied,* 486 U.S. 1017, 100 L. Ed. 2d 218, 108 S. Ct. 1756 (1988)).

In addition to Illinois, New Jersey, Ohio, South Carolina, and Tennessee, other state courts have addressed *Brown* and have held that giving a no–sympathy instruction in the penalty phase of a capital trial is not unconstitutional. *E.g., State v. Moen,* 309 Or. 45, 786 P.2d 111 (1990); *Fox v. State,* 779 P.2d 562 (Okla. Crim. App. 1989), *cert. denied,* 108 L. Ed. 2d 777 (1990); *Woods v. State,* 547 N.E.2d 772 (Ind. 1989); *State v. Copeland,* 530 So. 2d 526 (La. 1988); *cf. State v. Clemmons,* 753 S.W.2d 901 (prosecutor reminded jury of nonexistent oath that it would make its decision without sympathy, prejudice, hatred, or fear; court said statement was incorrect (jury took no such oath), but also said sympathy is not a proper factor for the jury to consider in reaching its decision as to punishment), *cert. denied,* 488 U.S. 948 (1988).

 As have the vast majority of courts addressing this question, we conclude that giving a no–sympathy instruction does not violate the Eighth and Fourteenth amendments.

Petitioner argues, however, that even if the reasoning in *Parks* applies to this case, it invalidates, rather than validates, the instruction here. He reasons that the instruction in *Parks* to "avoid any influence of sympathy . . . or other

arbitrary factor", *Parks,* 108 L. Ed. 2d at 423, is akin to the "mere sympathy" instruction in *Brown.* He reasons that these instructions are constitutionally permissible. In contrast, he maintains, the instruction here does not explain that the sympathy to be avoided is that of an arbitrary nature or mere sympathy unrelated to the evidence. He argues that consideration of sympathy based upon the evidence is constitutionally required.

After *Parks,* however, it is clear to us that neither *Brown* nor *Parks* should be read as narrowly as petitioner urges.[4] The import of *Brown* is that a general appeal to the jurors' emotional responses is impermissible, while full consideration of objective mitigating circumstances is constitutionally mandated. *State v. Moen,* 786 P.2d at 139 (rejecting defendant's argument that "mere sympathy" and "extraneous emotion" are inappropriate considerations under *Brown* while "sympathy" which is not "mere" or "extraneous" is appropriate jury consideration). *Brown* does not stand for the proposition that "mere sympathy" is to be distinguished from "sympathy."

If there was ever any doubt on this question, the Court's analysis in *Parks* resolved it:

> The objectives of fairness and accuracy are more likely to be threatened than promoted by a rule allowing the sentence to turn not on whether the defendant, in the eyes of the community, is morally deserving of the death sentence, but on whether the defendant can strike an emotional cord in a juror.

*Parks,* 108 L. Ed. 2d at 429. The Court's reasoning applies whether the sympathy at issue is "mere" sympathy or sympathy as a purely emotional response to the evidence.

Petitioner maintains that, regardless of *Parks,* the no-sympathy instruction is reversible error under state law. Petitioner relies heavily on *State v. Quinlivan,* 81 Wn.2d 124, 499 P.2d 1268, 72 A.L.R.3d 835 (1972). Analysis of *Quinlivan* within its historical framework demonstrates

---

[4]Before the United States Supreme Court opinion in *Parks,* Rupe argued that the instruction in that case was the same as here, and relied on the favorable decision by the Tenth Circuit.

why the case is now of no precedential value, contrary to petitioner's argument.

In *Quinlivan,* the defendant appealed his convictions and sentence of death. This court reversed his convictions because erroneous insanity instructions given the jury constituted reversible error. Of importance here, the court also determined that error resulted from the giving of a no–sympathy instruction. The jury was instructed not to be moved by sympathy in reaching its verdict. The jury was also instructed to consider all the evidence admitted in the case, "not only that which is directly connected with the crimes charged, but also the evidence bearing upon defendant's background, rearing, environment and family history." *Quinlivan,* at 130. The court reasoned that the second of these instructions would normally leave open the possibility of the jury's consideration of sympathy as a factor in reaching its penalty decision, but because the first instruction specifically warned the jury not to consider sympathy, the jury could have concluded that sympathy was to play no part in its decision on the penalty issue. *Quinlivan,* at 130.

The court said that contrary to the implication in the instructions, sympathy is an appropriate factor for the jury to consider in determining the penalty. The court cited as authority two California cases, *People v. Bandhauer,* 1 Cal. 3d 609, 463 P.2d 408, 83 Cal. Rptr. 184 (1970) and *People v. Polk,* 63 Cal. 2d 443, 406 P.2d 641, 47 Cal. Rptr. 1 (1965), *cert. denied,* 384 U.S. 1010 (1966). These two cases are traceable to *People v. Friend,* 47 Cal. 2d 749, 306 P.2d 463 (1957), *overruled on other grounds in People v. Love,* 56 Cal. 2d 720, 366 P.2d 33 (1961) and *People v. Morse,* 60 Cal. 2d 631, 388 P.2d 33, 36 Cal. Rptr. 201 (1964). In *Friend,* the court determined that the prosecutor's argument and the trial court's instructions gave the erroneous impression that it was necessary to find mitigating circumstances before the jury could assess punishment at life imprisonment rather than death. The court thus reversed

defendant's death sentence and remanded for resentencing proceedings.

The court in *Friend* explained that the choice between death and life imprisonment is in every case committed to the jury's absolute discretion, "that insofar as selecting the penalty is concerned . . . the law does not itself prescribe, nor authorize the court to innovate, any rule circumscribing the exercise of their discretion. . . ." *Friend,* at 767. Among factors which the court listed as being solely within the jury's discretion to consider was "sympathy or clemency." *Friend,* at 768.

The California court's deference to absolute, unfettered jury discretion accords with a number of opinions by this court addressing this state's death penalty statutory scheme under which the defendant in *Quinlivan* was sentenced. *E.g., State v. Music,* 79 Wn.2d 699, 705–07, 489 P.2d 159 (1971), *vacated in part,* 408 U.S. 940 (1972). In *Music,* the court rejected defendant's argument that the jury's function in choosing, without guidelines, between imposition of life imprisonment or the death penalty violated the state and federal constitutions. The court relied upon the United States Supreme Court's decision in *McGautha v. California,* 402 U.S. 183, 28 L. Ed. 2d 711, 91 S. Ct. 1454 (1971), where the Court said that "we find it quite impossible to say that committing to the untrammeled discretion of the jury the power to pronounce life or death in capital cases is offensive to anything in the Constitution." *Music,* at 706 (quoting *McGautha,* at 207).

As is now well known, subsequently the United States Supreme Court invalidated as violative of the Eighth Amendment death penalty schemes like the discretionary death statute upheld in *McGautha. See State v. Bartholomew,* 98 Wn.2d 173, 654 P.2d 1170 (1982), *State's cert. granted and remanded,* 463 U.S. 1203, *defendant's cert. denied,* 463 U.S. 1212 (1983) (*Bartholomew* I) (discussing landmark decisions in *Furman v. Georgia,* 408 U.S. 238, 33 L. Ed. 2d 346, 92 S. Ct. 2726 (1972); *Gregg v. Georgia,* 428 U.S. 153, 49 L. Ed. 2d 859, 96 S. Ct. 2909 (1976); *Woodson*

*v. North Carolina,* 428 U.S. 280, 49 L. Ed. 2d 944, 96 S. Ct. 2978 (1976); *Proffitt v. Florida,* 428 U.S. 242, 49 L. Ed. 2d 913, 96 S. Ct. 2960 (1976)).

Rather than "untrammeled" (absolute, unguided) discretion, the jury must be provided with "objective standards to guide, regularize, and make rationally reviewable the process for imposing a sentence of death." *Woodson,* at 303; *Bartholomew* I, at 184. The death penalty statute under which the defendant in *Quinlivan* was sentenced, *see* Laws of 1919, ch. 112, § 1, was declared unconstitutional by this court following *Furman. State v. Baker,* 81 Wn.2d 281, 501 P.2d 284 (1972) (handed down less than 2 months after *Quinlivan*). Under *Furman,* the California statute was also unconstitutional.

Thus, the holding in *Quinlivan* that giving the no–sympathy instruction was reversible error is ultimately founded on an unconstitutional interpretation of unconstitutional death penalty schemes. On the no–sympathy issue, therefore, the opinion is not sound precedent.

Petitioner correctly notes, however, that in two recent opinions this court has cited *Quinlivan.* In *State v. Mak,* 105 Wn.2d 692, 718 P.2d 407, *cert. denied,* 479 U.S. 995 (1986), the defendant complained about the lack of a sympathy instruction and argued that sympathy is an appropriate factor for the jury to consider in capital sentencing proceedings. We observed that the jury instructions gave the jury the right to consider mercy, and reasoned that, because mercy and sympathy are both defined in terms of compassion, even if defendant was entitled to argue sympathy as he argued was his right, under the instructions given he was able to do so. However, we did not address in *Mak* the issue before us now, and we clearly did not hold that giving a no–sympathy instruction is reversible error.

In *State v. Rice,* 110 Wn.2d 577, 757 P.2d 889 (1988), *cert. denied,* 491 U.S. 910, 105 L. Ed. 2d 707, 109 S. Ct. 3200 (1989), the defendant argued that failure to give the instruction at issue here erroneously allowed the jury to consider sympathy for the victims. We determined that not

giving the instruction was not error, and then said that "had the trial court then instructed the jury 'you will permit neither sympathy nor prejudice to influence you', he would have created reversible error. . . . *See State v. Quinlivan,* 81 Wn.2d 124, 129–30, 499 P.2d 1268, 72 A.L.R.3d 835 (1972)." *Rice,* at 611–12. We agree that this statement suggests that giving a no–sympathy instruction is reversible error. Again, however, the issue before us now was not at issue in *Rice.* The statement in *Rice* is dicta, because the precise issue there was the failure to instruct that sympathy for the victims was an improper consideration for the jury. As explained herein, our close examination of this issue, when directly faced with the propriety of the no–sympathy instruction, and our examination of the antecedents to the holding in *Quinlivan,* undertaken here but not in *Rice,* demonstrate that the statement in *Rice* has proven to be incorrect.

*Mak* and *Rice* both refer only to *Quinlivan* in this area, and neither opinion contains any analysis independent of *Quinlivan* which supports petitioner.

At oral argument defense counsel characterized *Quinlivan* as setting forth state common law that giving a no–sympathy instruction in the sentencing phase of a capital trial is reversible error. *Quinlivan* does not identify any basis for its holding other than the California cases referred to above. To the extent the relevant holding in *Quinlivan* rested on federal constitutional law, it is invalid as explained herein. To the extent it rested on this state's death penalty statute then in effect it is also invalid, as that statute was unconstitutional.

As to the possibility that the state constitution may be implicated, the lack of any reference to any state constitutional provision in *Quinlivan* leads us to conclude that this court did not base its decision on state constitutional grounds. Instead, it appears the court followed then current thinking that under the federal constitution the jury must have unfettered discretion in deciding whether to impose the death sentence.

■ Regardless, the state constitution could not permit what is forbidden under the United States Constitution. Allowing a jury to decide whether to impose the death sentence based upon the emotional reaction of sympathy is irreconcilable with the federal constitutional requirement that a sentencing decision be reliable and nonarbitrary—the constitutionally required exercise of channeled discretion by the sentencing jury. It seems to us, therefore, that the state constitution would be of no help even if petitioner properly invoked it. However, petitioner has not argued that the state constitution affords greater protections under the circumstances here than does the federal constitution, and we therefore decline to issue any holding under the state constitution.[5] *See State v. Wethered*, 110 Wn.2d 466, 471–73, 755 P.2d 797 (1988). We reject, however, petitioner's contention that *Quinlivan* establishes a common law principle which we may follow despite *Brown* and *Parks*.

From our foregoing analysis, it follows that we do not agree with petitioner that a no–sympathy instruction is, as a general proposition, necessarily inconsistent with jury instructions on mitigating circumstances.

Petitioner contends, however, that the no–sympathy instruction conflicted with the instructions actually given in this case defining mitigating evidence. He maintains that conflict on a material issue, the decisional standard, requires reversal, relying upon, among other cases, *State v. Wanrow*, 88 Wn.2d 221, 239, 559 P.2d 548 (1977). He argues that jury instructions 1 and 9 conflicted on the role of sympathy in the jury's consideration of mitigating circumstances.

---

[5]We held in *State v. Bartholomew*, 101 Wn.2d 631, 639–40, 683 P.2d 1079 (1984) that Const. art. 1, § 14 (prohibiting cruel punishment) and art. 1, § 3 (due process) may afford greater protection in capital cases than their federal counterparts. Our holding was specifically addressed to the evidence which the prosecution could constitutionally present in the sentencing phase of a capital case. We concluded that under the state constitution the prosecution could not present in its case in chief evidence of a defendant's uncharged crimes. The holding operated in favor of defendant, but did not contravene the federal constitution.

As explained above, to the extent petitioner's argument rests on the assertion that sympathy is a proper jury consideration, we have already rejected it. As explained below, to the extent it might be argued that instruction 1 tells a jury not to be swayed by sympathy and instruction 9 indicates otherwise, we do not agree that the instructions given in this case contradicted each other on the proper decisional standard.

Instruction 1 informed the jury that it was not to permit prejudice or sympathy to influence it. Clerk's Papers, at 397. This instruction is proper under our analysis in this opinion. Instruction 7 informed the jury that it could consider any relevant factors in deciding whether there were not sufficient mitigating circumstances to merit leniency and then listed, as nonexclusive, the factors set forth in RCW 10.95.070. Clerk's Papers, at 403. We have previously approved instructions in the language of the statute as accurately informing the jury of appropriate mitigating factors, while not limiting the defendant's right to present factors not listed in the statute. *State v. Rupe*, 101 Wn.2d 664, 709–10, 683 P.2d 571 (1984); *State v. Campbell*, 103 Wn.2d 1, 28, 691 P.2d 929 (1984), *cert. denied*, 471 U.S. 1094 (1985).

Instruction 9 directed the jury that "[m]itigating circumstances, as referred to in these instructions, means any relevant factors which do not constitute a justification or excuse of the offense in question, but which, in fairness and mercy, may be considered as cause for a less severe punishment." Clerk's Papers, at 405. Contrary to petitioner's claim, this instruction is not inconsistent with the no–sympathy instruction. The instruction directs the jury that mitigating evidence is evidence which in fairness *and* mercy may call for leniency. The instruction clearly ties the reference to "mercy" to "fairness" and to the mitigating circumstances which defendant presents. The jury is thus directed to engage in a "reasoned moral response" to defendant's mitigating evidence, as required, rather than an emotional reaction.

Moreover, instruction 9 is not inconsistent with the constitutional mandate that the defendant be allowed to present all relevant mitigating evidence, including that relating to defendant in addition to that relating to the offense. While the instruction defines mitigating circumstances as relevant factors which do not constitute a justification or excuse of the offense in question, this language does not improperly limit the jury's consideration of mitigating evidence to that relating to the offense only. To the contrary, the instruction directs that *any* relevant factor may be considered, but carefully excludes factors constituting excuse or justification, which are not relevant mitigating factors in sentencing but are instead considerations involved with the determination of guilt. *See* RCW 9A.16-.030 (excusable homicide); RCW 9A.16.030, .040 (justifiable homicide).

Instruction 1 also told the jury to consider the instructions as a whole and not place any undue emphasis on any instruction. Clerk's Papers, at 396.

We conclude that these instructions properly informed the jury of its role in considering mitigating circumstances, and guided the jury to consider such factors as in mercy *and* fairness, together, might give cause for leniency. The jury was properly instructed not to permit sympathy to influence it. The instructions did not conflict on the proper decisional standard.

Moreover, as this court noted in *State v. Rupe,* 108 Wn.2d 734, 770, 743 P.2d 210 (1987), *cert. denied,* 486 U.S. 1061 (1988), all possible mitigating factors were before the jury. Petitioner presented the testimony of 58 witnesses concerning the existence of mitigating circumstances. The prosecutor agreed that petitioner's background was exemplary. Verbatim Report of Proceedings, at 3804. The prosecutor told the jury that the statute allows for consideration of mitigating circumstances in addition to those listed in instruction 7. Verbatim Report of Proceedings, at 3805.

Defense counsel reminded the jury that the defense witnesses spoke well of petitioner. Verbatim Report of Proceedings, at 3844. Defense counsel referred to the no-sympathy instruction and cautioned the jury not to be affected by sympathy for the victims. Verbatim Report of Proceedings, at 3861–62. Defense counsel said "[i]f you acted on your emotional reaction to those photographs [of the victims], that would be revenge, that would be vengeance. That has no place in our criminal justice system." Verbatim Report of Proceedings, at 3862. Defense counsel said petitioner's "life is a statement for mercy. In fairness and mercy is part of the definition of mitigating circumstances in the instructions." Verbatim Report of Proceedings, at 3862.

In rebuttal, the prosecutor reminded the jury it was to read the instructions as a whole and not give particular emphasis to any one. Verbatim Report of Proceedings, at 3865. The prosecutor responded to defense counsel's caution not to consider sympathy for the victims and said:

> . . . [Defense counsel] tells you you should not consider sympathy nor prejudice, and yet I submit to you that a lot of the testimony that you heard was for nothing other than sympathy.
> . . . [Defense counsel's] last few remarks [about others who would be affected by the jury's decision] were to elicit feelings of sympathy for other people. We are not here to consider other people. We are here to consider Mitchell Rupe right now.
> If we are going to talk about people that are concerned about Mitchell Rupe, then let's talk about people that were concerned about the victims. Those aren't the issues. You push aside sympathy. Consider the nature of the crime and the facts regarding the defendant and not anybody else.

Verbatim Report of Proceedings, at 3886. The prosecutor also referred to defense counsel's argument about the photographs:

> . . . [Defense counsel] said you probably had an emotional reaction when you saw some of those photographs. I think you had a reaction, and probably there was some emotion there. We are all human beings. There is nothing wrong with emotion. But you can't let sympathy nor prejudice affect you.

Verbatim Report of Proceedings, at 3894.

The defense was able to fully present and argue mitigating circumstances, both parties correctly informed the jury it was not to consider sympathy for the victims, the prosecutor told the jury not to consider sympathy for others who might be affected by their decision, and directed their attention to the nature of the crime and the facts regarding the defendant and not anyone else.

The giving of the no–sympathy instruction was not error.[6] We deny the personal restraint petition as to this remaining issue.

## APPENDIX A

In *State v. Rupe*, 101 Wn.2d 664, 683 P.2d 571 (1984) we addressed the following issues: whether the trial court abused its discretion by refusing to grant petitioner's motion for a change of venue; whether the trial court erred by admitting petitioner's statements to police; whether technical violations of RCW 9.73.090 (relating to requirements for taped recordings of arrested persons) required exclusions of taped statements to police; whether petitioner was prejudiced by admission of a 911 tape, predeath photographs of the victims, or hearsay testimony; whether petitioner was denied due process by exclusion of evidence regarding results of a polygraph examination of a state's chief witness; whether petitioner's separate convictions for robbery violated double jeopardy; whether due process requires that the State release to a defendant the fact that identified witnesses may have potentially exculpatory evidence when the witnesses' statements have been released to defense counsel; whether the deputy prosecutor improperly exceeded the scope of cross examination; whether the jury was improperly allowed to consider aggravating factors not supported by the evidence; whether petitioner was denied due process by the procedure for death qualifying the jury; whether this state's capital punishment statute is unconstitutional; whether petitioner was prejudiced by improper admission of aggravating evidence; whether the trial court improperly excluded mitigating evidence during the sentencing phase of the trial; whether the jury was

---

[6]Despite defense counsel's having proposed a no–sympathy instruction, we have reviewed the issue in this case as we have in similar circumstances addressed issues on some prior occasions in capital cases where the death sentence has been imposed. *See State v. Rice*, 110 Wn.2d 577, 611 n.19, 757 P.2d 889 (1988), *cert. denied*, 491 U.S. 910, 105 L. Ed. 2d 707, 109 S. Ct. 3200 (1989).

improperly instructed during the sentencing phase; and whether petitioner was prejudiced by the trial court allowing the jury access to publicity during the guilt and sentencing phases of the trial.

## APPENDIX B

In our opinion affirming the death sentence in *State v. Rupe,* 108 Wn.2d 734, 743 P.2d 210 (1987), *cert. denied,* 486 U.S. 1061 (1988), we addressed twelve issues raised by petitioner relating to his second sentencing proceeding, including: whether statutory or due process rights were violated because the State did not refile a notice of intent to seek the death penalty; whether petitioner's right to counsel was violated; whether a right to "speedy sentencing" was violated; whether due process was violated on the basis that the State did not bring him before the trial court in a timely manner; whether the resentencing trial resulted in petitioner's twice being placed in jeopardy for the same offense; whether petitioner was denied his right to trial by a jury composed of a fair cross section of the community; whether petitioner was denied the right to a fair and impartial jury as a result of the trial court's failure to excuse three jurors he challenged for cause; whether petitioner's right to a fair and impartial trial was denied because the trial court denied his motion for a change of venue; whether the trial court erred by admitting evidence at the resentencing trial of the facts and circumstances of the crime; whether the trial court erred by admitting certain photographic exhibits; whether the trial court erred in permitting the deputy prosecutor to ask in cross examination about the possibility that his sentence might be commuted; and whether the trial court gave erroneous instructions on jury unanimity. Pursuant to RCW 10.95.130(2), we examined the record and determined that there was sufficient evidence supporting the jury's conclusion that there were insufficient mitigating circumstances to warrant leniency; that the death sentence was not excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant; and that the sentence of death was not the result of passion or prejudice.

CALLOW, C.J., and DORE, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.

UTTER, J. (dissenting)—The majority's conclusion that the United States Supreme Court decisions in *California v. Brown,* 479 U.S. 538, 93 L. Ed. 2d 934, 107 S. Ct. 837 (1987), and *Saffle v. Parks,* __ U.S. __, 108 L. Ed. 2d 415, 110 S. Ct. 1257 (1990), compel the holding that sympathy

for the defendant is an impermissible consideration for the jury in the penalty phase of a capital case is simply wrong. Under United States Supreme Court doctrine and our statutes, the purpose of presenting mitigating evidence is to elicit feelings of sympathy based on some aspect of the defendant's character or background that prompts the jury to exercise mercy and not impose the death penalty.

Sympathy based on the evidence always has been and still is a factor in the jury's determination. Nothing in *California v. Brown, supra,* or *Saffle v. Parks, supra,* alters this. *Brown* stands for the proposition that jurors are to be cautioned against relying on *extraneous* emotional factors. The Court said, "By concentrating on the noun 'sympathy,' respondent ignores the crucial fact that the jury was instructed to avoid basing its decision on *mere* sympathy." *Brown,* 479 U.S. at 542. Thus, the basis of the decision is the qualifying term "mere". The Court found that a reasonable juror would interpret the jury instruction as "a directive to ignore only the sort of sympathy that would be totally divorced from the evidence adduced during the penalty phase." *Brown,* at 542. The only inference to be drawn from this is that sympathy grounded in the evidence is permissible. Other courts have concluded as much. *See State v. Price,* 326 N.C. 56, 388 S.E.2d 84, 102 (1990) (according to *Brown,* a defendant's Eighth Amendment rights are jeopardized only when the jury is urged to ignore sympathy supported by facts in the record).[7]

The majority's reliance on *Saffle v. Parks, supra,* is misplaced. *Parks* dealt with a procedural issue of federal

---

[7]The Tenth Circuit in *Parks v. Brown,* 860 F.2d 1545, 1553 (10th Cir. 1988), *cert. granted,* 490 U.S. 1034, 104 L. Ed. 2d 402, 109 S. Ct. 1930 (1989), also reached this conclusion. The court stated:

[*Brown*] implicitly suggested that sympathy that *is* based on the evidence is a valid consideration in sentencing that cannot constitutionally be precluded.

The court also mentioned in a footnote that the State conceded that the jury may consider sympathy for the defendant that is related to the evidence. 860 F.2d at 1553 n.10.

This decision was reversed by the Supreme Court on habeas corpus grounds in *Saffle v. Parks,* __ U.S. __, 108 L. Ed. 2d 415, 110 S. Ct. 1257 (1990).

habeas corpus law. The Court did not reach the merits of the antisympathy instruction and even if it had, the instruction is significantly different from the one here. The instruction in *Parks* is analogous to the one in *Brown*. Those instructions contain qualifying language that identifies the excluded sympathy as that which is extraneous to the evidence, and, therefore, arbitrary. The instruction here excludes all sympathy. There is no line drawn between sympathy rooted in the evidence and sympathy not rooted in the evidence. That is the difficulty with the antisympathy instruction used in this case and why its use in a capital sentencing proceeding is erroneous.

*Parks,* viewed from any perspective, does not apply to this case. Yet, the majority opts to effectively overrule binding Washington precedent and follow instead dicta in a nonbinding federal Supreme Court case dealing with federal habeas corpus doctrine.

The majority questions the rationale of *State v. Quinlivan,* 81 Wn.2d 124, 499 P.2d 1268, 72 A.L.R.3d 835 (1972), which is directly on point. In *Quinlivan,* the defendant was convicted of first degree murder, second degree murder, and first degree kidnapping. The jury imposed the death penalty for the first degree murder conviction. The defendant claimed that the jury instruction cautioning the jury not to be moved by sympathy was erroneous. The court held the trial court erred in not instructing the jury that sympathy was a proper consideration in determining the penalty. *Quinlivan,* 81 Wn.2d at 129. The court found that the antisympathy instruction conflicted with the instruction telling the jury to consider evidence bearing on the defendant's background, rearing, environment and family history. *Quinlivan,* at 130. The court was concerned that the jury could have concluded that sympathy was to play no part in its penalty decision. The court then said, "Contrary to this implication in the instructions, sympathy is an appropriate factor in the jury's consideration of the penalty issue." *Quinlivan,* at 130.

The majority states that this reasoning is no longer valid because *Quinlivan* was decided under the prior death penalty statute which the court declared unconstitutional in *State v. Baker,* 81 Wn.2d 281, 501 P.2d 284 (1972), as a result of the United States Supreme Court decision in *Furman v. Georgia,* 408 U.S. 238, 33 L. Ed. 2d 346, 92 S. Ct. 2726 (1972). The statute was unconstitutional because it gave juries untrammeled discretion. The United States Supreme Court ruled that the discretion of juries must be channeled and guided by the imposition of standards to prevent the arbitrary infliction of the death penalty. Thus, the majority concludes that sympathy for the defendant rooted in the mitigating evidence presented is inconsistent with the jury's guided discretion.

However, the United States Supreme Court has never held that the jury's discretion in determining whether to impose the death penalty is to be eviscerated. On the contrary, in *McCleskey v. Kemp,* 481 U.S. 279, 95 L. Ed. 2d 262, 107 S. Ct. 1756 (1987), the Court noted that jury discretion in this matter still exists. The Court stated:

> In contrast to the carefully defined standards that must narrow a sentencer's discretion to *impose* the death sentence, the Constitution limits a State's ability to narrow a sentencer's discretion to consider relevant evidence that might cause it to *decline to impose* the death sentence.

*McCleskey,* 481 U.S. at 304. The Court went on:

> Any exclusion of the "compassionate or mitigating factors stemming from the diverse frailties of humankind" that are relevant to the sentencer's decision would fail to treat all persons as "uniquely individual human beings."

*McCleskey,* at 304 (quoting *Woodson v. North Carolina,* 428 U.S. 280, 304, 49 L. Ed. 2d 944, 96 S. Ct. 2978 (1976)). Therefore, "a capital punishment system that did not allow for discretionary acts of leniency 'would be totally alien to our notions of criminal justice.'" *McCleskey,* at 312 (quoting *Gregg v. Georgia,* 428 U.S. 153, 199 n.50, 49 L. Ed. 2d 859, 96 S. Ct. 2909 (1976)). The Court concluded that with respect to the jury's decision not to impose the death penalty, the State may not channel the sentencer's discretion.

*McCleskey,* at 306. *See also Eddings v. Oklahoma,* 455 U.S. 104, 114–15, 71 L. Ed. 2d 1, 102 S. Ct. 869 (1982) (sentencer determines the weight to be given relevant mitigating evidence).[8]

The majority is concerned with meaningful appellate review. It says that if emotion plays a part in the sentencing decision, this court's review is affected. To state the obvious, this court only reviews a jury's decision to impose the death penalty. RCW 10.95.100. There is no review of a jury's decision *not* to impose the death penalty. *See McCleskey,* at 311 ("[D]iscretionary exercises of leniency [by the jury] are final and unreviewable"). Thus, there is no need to channel the jury's discretion in terms of sentencing the capital defendant to life imprisonment. The Supreme Court has said repeatedly that the jury's decision *to impose* the death penalty must be based on reason, not caprice and emotion. *See, e.g., Booth v. Maryland,* 482 U.S. 496, 96 L. Ed. 2d 440, 107 S. Ct. 2529 (1987); *McCleskey v. Kemp, supra; Caldwell v. Mississippi,* 472 U.S. 320, 329, 86 L. Ed. 2d 231, 105 S. Ct. 2633 (1985); *Pulley v. Harris,* 465 U.S. 37, 53, 79 L. Ed. 2d 29, 104 S. Ct. 871 (1984); *Eddings v. Oklahoma, supra; Godfrey v. Georgia,* 446 U.S. 420, 433, 64 L. Ed. 2d 398, 100 S. Ct. 1759 (1980); *Gardner v. Florida,* 430 U.S. 349, 358, 51 L. Ed. 2d 393, 97 S. Ct. 1197 (1977).

However, there are reasons grounded in due process why there should be more leeway given to the jury's decision not to impose the death penalty. Judicial review of the death sentence will always be "meaningful" because it necessarily

---

[8]Indeed, it is likely impossible to guide the discretion of juries. William Geimer, professor of law at Washington and Lee University, conducted an empirical study of jury decisions in 10 Florida capital cases. In five, the jury recommended a sentence of death and in five, the jury recommended a sentence of life imprisonment without possibility of parole. He interviewed many of the jurors sitting on these cases and concluded that the imposition of the death penalty is random and that all the so–called standards to channel discretion have contributed nothing to the actual decisionmaking process. He refers to the situation as the "illusion of guided discretion." Geimer & Amsterdam, *Why Jurors Vote Life or Death: Operative Factors in Ten Florida Death Penalty Cases,* 15 Am. J. Crim. Law 1 (1988).

means that the jury did not have enough sympathy for the defendant to opt for mercy. Emotion generated by the mitigating evidence is discounted by the mere fact that a death sentence was returned.

The majority notes that sympathetic considerations could work against the defendant. Majority, at 388. This same argument was made in *Brown. Brown,* at 543. This argument, however, should be rejected. Sympathy is defined as compassion. An unfavorable emotional response to the defendant would not be sympathy, but rather prejudice. Prejudice is improper. Sympathy by its definition can only be exercised in the defendant's favor.

The State cannot shackle the jury's discretion in its evaluation of mitigating evidence by prohibiting the jury from considering sympathy for the defendant based on some aspect of the defendant's background or character. Consequently, the rationale of *Quinlivan* is still sound because jury discretion in determining not to impose the death penalty is still recognized by the Supreme Court.

*Quinlivan* has been cited by two subsequent death penalty decisions of this court, lending credence to its rationale even though a different death penalty statute is in force.

In *State v. Rice,* 110 Wn.2d 577, 757 P.2d 889 (1988), *cert. denied,* 491 U.S. 910, 105 L. Ed. 2d 707, 109 S. Ct. 3200 (1989), the defendant challenged the introductory instruction given in the penalty phase. The instruction was a modification of WPIC 1.02 which omitted the last four sentences of the pattern instruction. The last sentence of WPIC 1.02 is, "Throughout your deliberations you will permit neither sympathy nor prejudice to influence you." The defendant contended that the omission of this sentence allowed the jury to consider sympathy for the victims in its deliberations. This court stated that it was proper for the trial court to omit this part of the instruction. Including it would have been reversible error because it would have improperly precluded the jury from considering sympathy for the defendant, citing *Quinlivan. Rice,* 110 Wn.2d at 612.

The majority suggests this is dicta. Dictum is a statement not essential to the determination of the issue of the case. Black's Law Dictionary 541 (4th ed. 1951). Far from being dicta, this portion of the analysis in *Rice* is necessary to the holding because it directly answers the defendant's contention that the antisympathy instruction should have been given. The court went on to narrow the issue to whether an instruction directing the jury not to be influenced by sympathy for the victims was required. Nevertheless, the court could not have reached that issue without first determining that it was not error to omit the pattern antisympathy instruction. Therefore, the reason given by the court, that otherwise the jury would be precluded from considering sympathy for the defendant, is necessary to the holding.

In *State v. Mak,* 105 Wn.2d 692, 718 P.2d 407, *cert. denied,* 479 U.S. 995 (1986), the defendant assigned error to the trial court's failure to give a proposed instruction on sympathy. The jury was not instructed to ignore sympathy. The court found no prejudice from the lack of an instruction on sympathy because the jury was instructed to consider mercy. Since mercy and sympathy are both defined in terms of compassion, the jury was adequately apprised of the proper role of emotional factors in a capital sentencing proceeding. *Mak,* 105 Wn.2d at 754. Thus, this court has recognized that sympathy for the defendant is appropriate in the penalty phase of a capital case.

By not following *Quinlivan, Rice* and *Mak,* the majority effectively overrules clear Washington precedent on the appropriateness of sympathy for the defendant in a capital sentencing proceeding. The instruction on sympathy found improper in *Rice* is identical to the instruction at issue in this case. It was found erroneous in a case that is binding on this court today. Thus, the instruction used in this case was error.

The fundamental issue presented by an antisympathy instruction is whether the jury is likely to become confused by an instruction telling it to disregard sympathy and then being instructed to consider all mitigating circumstances in

fairness and mercy. If there is a substantial possibility that the jury would interpret the sympathy instruction as disallowing it from taking into account mitigating circumstances related to the background or character of the defendant, then the two instructions conflict. The critical question is whether this interpretation is one a reasonable jury could have made. *Mills v. Maryland,* 486 U.S. 367, 375–76, 100 L. Ed. 2d 384, 108 S. Ct. 1860 (1988). *See also Francis v. Franklin,* 471 U.S. 307, 315–16, 85 L. Ed. 2d 344, 105 S. Ct. 1965 (1985) ("The question, however, is not what the State Supreme Court declares the meaning of the charge to be, but rather what a reasonable juror could have understood the charge as meaning.").

The language of the challenged instruction creates a substantial possibility that reasonable jurors could believe they were not permitted to exercise mercy or compassion when sentencing the petitioner, even if such feelings were rooted in the evidence. Sympathy is likely to be perceived by a reasonable juror as synonymous with compassion and mercy. Webster's defines both sympathy and mercy as compassion. *Webster's Third New International Dictionary* 1413, 2317 (1976). On the one hand they were told not to have sympathy, that is, compassion. On the other hand, they were told to consider mercy, that is, compassion. The conflict is plain and confusion probable.

In *Legare v. State,* 250 Ga. 875, 878, 302 S.E.2d 351 (1983), the Georgia Supreme Court disapproved an anti-sympathy instruction because it might confuse the jury as to its option to recommend mercy. In that case, the jury was fully instructed on mitigating circumstances. The court concluded:

> Thus this jury was charged to consider in mitigation all circumstances which in fairness or mercy offer a basis for not imposing the death penalty, a charge the substance of which is constitutionally required. But the jury was also charged not to base their verdict on sympathy for the defendant. Since the evidence in mitigation might well evoke sympathy, we find these charges in irreconcilable conflict. Because the charge

complained of might well confuse the jury and limit their constitutionally required consideration of evidence in mitigation, we hereby disapprove it.

250 Ga. at 878.

The danger that a jury would feel inhibited in its ability to consider mitigating evidence because of the bar on considering sympathy was recognized by Justice O'Connor in her concurrence in *California v. Brown, supra.* The majority invokes her concurrence to support its position but fails to mention that she acknowledged the possibility that juries would misinterpret an antisympathy instruction. She stated:

> As [the] dissent illustrates, however, one difficulty with attempts to remove emotion from capital sentencing through instructions such as those at issue in this case is that juries may be misled into believing that mitigating evidence about a defendant's background or character also must be ignored.

*Brown,* at 545–46.

Thus, Justice O'Connor implicitly acknowledges that the focused purpose of mitigating evidence is to evoke a feeling of sympathy or compassion for the defendant that might persuade the jury to spare his life. *See People v. Johnson,* 47 Cal. 3d 1194, 767 P.2d 1047, 255 Cal. Rptr. 569, 597 (1989) (jury instructed permissible to consider sympathy for the defendant); *People v. Robertson,* 48 Cal. 3d 18, 767 P.2d 1109, 255 Cal. Rptr. 631, 650 (1989) (under *Eddings* and *Lockett,* defendant is constitutionally entitled to have sentencer consider any sympathy factor raised by the evidence).[9]

In *State v. Ramseur,* 106 N.J. 123, 524 A.2d 188 (1987), the New Jersey court found an instruction cautioning the jury to decide the case without any sympathy did not create confusion for the jury with respect to the charge to consider any mitigating factor, any aspect of the defendant's character or record, and any circumstances of the crime that

---

[9]The drafters of the California pattern antisympathy instruction cautioned that the instruction should not be used in the penalty phase of a capital trial. *People v. Easley,* 34 Cal. 3d 858, 671 P.2d 813, 196 Cal. Rptr. 309, 320 (1983).

would justify a sentence less than death. But the court recognized that the general admonition against sympathy could conflict with the permissible role of sympathy specifically engendered by any mitigating factor. The court cautioned trial courts to be aware of that possibility and frame their instructions to avoid it. *Ramseur,* 524 A.2d at 299.

It is generally acknowledged that the most effective strategy for defense counsel at the penalty phase is to play on the jurors' sympathy and compassion. Welsh S. White, in his book, *The Death Penalty in the Eighties: An Examination of the Modern System of Capital Punishment,* characterizes the best defense attorneys as the ones who have successfully appealed to the emotions of the jury. He points to Clarence Darrow's moving plea for the lives of Leopold and Loeb as a famous example of a superb argument that effectively aroused the sentencer's sympathy. W. White, *The Death Penalty in the Eighties: An Examination of the Modern System of Capital Punishment* 82–83 (1987). White argues that defense argument which pertains to the evidence presented should not be excluded because it is emotional. He explains that the Supreme Court's decision in *Lockett v. Ohio,* 438 U.S. 586, 57 L. Ed. 2d 973, 98 S. Ct. 2954 (1978), which requires the sentencer to make an individualized sentencing determination based on the defendant's personal characteristics as well as the circumstances of the crime, mandates the kind of eloquence that will arouse the sentencer's feelings. W. White, at 85–86. White concludes:

> Under *Lockett,* the sentencer is required to act for the community in deciding whether the defendant should be executed or spared. To do so, the sentencer must rely on more than logic, and in seeking to persuade the sentencer to exercise mercy, defense counsel should be permitted to appeal to the sentencer's feelings as well as its cognitive faculties.
>
> . . . .
> . . . Under the circumstances, emotional appeals are appropriate because the judgment to be made—whether the defendant will live or die—is one that should not be predicated on logic alone.

W. White, at 86–87.

Where the majority goes wrong is in invoking the phrase "reasoned *moral* response" which first appeared in Justice O'Connor's concurrence in *California v. Brown, supra.* O'Connor stated:

> In my view, evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse. This emphasis on culpability in sentencing decisions has long been reflected in Anglo–American jurisprudence. . . . *Lockett* and *Eddings* reflect the belief that punishment should be directly related to the personal culpability of the criminal defendant. Thus, the sentence imposed at the penalty stage should reflect a reasoned *moral* response to the defendant's background, character, and crime rather than mere sympathy or emotion.

*Brown,* at 545.

Subsequently, courts at all levels have cited the phrase "reasoned *moral* response" as though it settles everything. Indeed, Justice Brennan in his dissenting opinion in *Saffle v. Parks, supra,* refers to it rather derisively as a talismanic phrase because no one has defined it. It is bandied about under the assumption that everyone must know exactly what is meant by a "reasoned *moral* response." The majority falls into this same trap.

Unfortunately, an inquiry into its meaning is not a simple matter. The sheer scope of the subject of morality and the number and variety of different theories regarding its nature is reason alone why the majority's reliance on the phrase is misplaced. What is moral is a question that has plagued philosophers for centuries. Thus, it is no small task defining "reasoned *moral* response" and a complete inquiry into the nature of morality is an endeavor beyond the scope of this dissent.

The one court that has described a "reasoned *moral* response" recognizes the sympathetic component. In *People v. Clark,* __ Cal. 3d __, 789 P.2d 127, 268 Cal. Rptr. 399, 431 (1990), the court stated:

> The jury must make a moral assessment of those facts as they relate to whether death is appropriate for the individual defendant, and must be free to reject death on the basis of any constitutionally relevant evidence. The jurors must, therefore, weigh the aggravating and mitigating factors, assigning whatever moral or sympathetic value each juror deems appropriate to each, and upon completion of the weighing process must decide if death is the appropriate penalty.

The view that morality is not devoid of emotion finds support in the history of philosophy.

David Hume, an eighteenth century British philosopher, was a precursor to the utilitarian philosophical movement. In *A Treatise of Human Nature and Enquiries Concerning Human Understanding and Concerning the Principles of Morals,* he expounded a moral theory emphasizing the emotional aspect of human nature. According to Hume, the basic assumptions on which we act are not conclusions drawn by the understanding from rational argument. Reason does play a part, but an individual's reflections and reasoning presuppose fundamental beliefs which are not themselves the product of reasoning. Moral distinctions are derived ultimately from feeling. Hume called this "moral sentiment." Thus, he minimized the role of reason in morals because reason alone is not capable of being the sole immediate cause of our actions. Since reason alone can never produce an action, it is subordinate to the passions. By passions, Hume means all emotions and affects.

For Hume, sympathy is an important cause of passions. By sympathy he means the natural inclination to share the feelings of another. It is a sympathy with humanity. Sympathy is the foundation of his moral theory because it is only through the operation of sympathy that the moral sentiment approves of the virtues. Through sympathy, we are able to see what is present in all of us. Therefore, society reaches agreement in its moral distinctions and sentiments because of the principle of sympathy.

A moral judgment is the result of the moral sentiment and reason acting together. Hume reasoned:

*[R]eason* and *sentiment* concur in almost all moral determinations and conclusions. The final sentence, it is probable, which pronounces characters and actions amiable or odious, praiseworthy or blameable; that which stamps on them the mark of honour or infamy, approbation or censure; that which renders morality an active principle and constitutes virtue our happiness, and vice our misery: it is probable, I say, that this final sentence depends on some internal sense or feeling, which nature has made universal in the whole species. For what else can have an influence of this nature? But in order to pave the way for such a sentiment, and give a proper discernment of its object, it is often necessary, we find, that much reasoning should precede, that nice distinctions be made, just conclusions drawn, distant comparisons formed, complicated relations examined, and general facts fixed and ascertained. . . .

D. Hume, *Enquiries Concerning Human Understanding and Concerning the Principles of Morals* 172–73 (3d ed. 1975).

Reason cannot be the only ingredient in a moral judgment. This is best illustrated by the moral judgment society has made with respect to killing. The act is the same in every situation; a person is killed. If a moral determination were derived solely from reason, every killing would give rise to the same moral determination because the fact is the same in every case. However, society views killing differently depending upon motives and intentions. A cold–blooded murder arouses a different feeling in people than a homicide committed in self–defense. Consequently, a different moral judgment applies to each situation and the perpetrators held to different standards of moral culpability. Thus, moral determinations and distinctions are essentially founded on feeling. As Hume put it:

But after every circumstance, every relation is known, the understanding has no further room to operate, nor any object on which it could employ itself. The approbation or blame which then ensues, cannot be the work of the judgement, but of the heart; and is not a speculative proposition or affirmation, but an active feeling or sentiment. . . .

D. Hume, app. I, at 290. "Morality, therefore, is more properly felt, than judg'd of". D. Hume, *A Treatise of Human Nature* 470 (1967).

Adam Smith was a close friend of Hume and expanded on his theory of morality. Although better known today for his economic teachings, Smith wrote a treatise called *The Theory of Moral Sentiments,* in which he also traced the origins of moral sentiments to sympathy. Whereas Hume's sympathy was a general societal sympathy, Smith stresses sympathy with the individual persons involved. Smith explains sympathy in terms of the imagination.

> As we have no immediate experience of what other men feel, we can form no idea of the manner in which they are affected, but by conceiving what we ourselves should feel in the like situation. . . .

A. Smith, *The Theory of Moral Sentiments* 9 (1976). Through our imagination, we place ourselves in another's position and are able to share the other's feelings. Thus, Smith's focus is on the situation that causes the passion, not the passion itself. Moral approbation and disapprobation are the result of the operation of sympathy.

> To approve of the passions of another, therefore, as suitable to their objects, is the same thing as to observe that we entirely sympathize with them; and not to approve of them as such, is the same thing as to observe that we do not entirely sympathize with them.

A. Smith, at 16.

Smith posits the impartial spectator to account for an objective standard of good and evil. Impartial means to be *not involved in the situation to be morally judged.*

> The compassion of the spectator must arise altogether from the consideration of what he himself would feel if he was reduced to the same unhappy situation, and, what perhaps is impossible, was at the same time able to regard it with his present reason and judgment.

A. Smith, at 12.

Thus, Smith also believed that moral judgments are founded on sympathy and emotion.

Out of the teachings of Hume and Smith rose an entire school of thought—the emotive theory of morality. The emotive theory regards moral judgments as the expressions of our emotions or feelings. The critical thinking or reason

of a perfect moral thinker is the manifestation of full representation and identification. R. Hare, *Moral Thinking* 98 (1981). Thus, the moral thinker must attempt to identify with others through intuitive thinking; in other words, sympathy. Critical thinking validates the intuitions. R. Hare, at 99. To put it simply, one must put oneself in the other's shoes when making a moral judgment.

Compassion is intimately connected with morality. B. Gert, *Morality: A New Justification of the Moral Rules* 228–29, 232 (1988). A perfect understanding without compassion will not lead one to follow moral ideals. B. Gert, at 172. Although being morally good is not primarily a matter of feelings, feelings are morally important inasmuch as they lead to morally good actions. B. Gert, at 173.

It is arguable, then, that a "reasoned *moral* response" entails an emotional reaction as well as a rational determination. For a jury to make a truly moral judgment, it must do so from the standpoint of sympathy.

There are, as well, philosophers who believe that morality is purely rational. The role of emotion and feeling in morality is subject to a great deal of debate and remains an open question. Thus, I believe the majority's reliance on the vague phrase "reasoned *moral* response" is the cause of its misinterpretation of the proper role of sympathy for the defendant arising out of the mitigating circumstances presented in the sentencing phase of a capital case.

For these reasons the majority goes too far in excluding all sympathy from the penalty phase. Sympathy for the defendant evoked by some aspect of his background or character is, by our statutory scheme, frequently a capital defendant's only opportunity to present to the jury reasons why it should not impose the death penalty. It should be clear to the jury that they are entitled to decide not to impose the death penalty on this ground. The instructions given in this case are in irreconcilable conflict because the jury was told to disregard sympathy yet consider mercy. Since both sympathy and mercy are defined in terms of compassion, the jury was not adequately informed of its

416

responsibility to consider the mitigating circumstances. The substantial possibility of confusion is too great and we should not allow this death sentence to stand.

DOLLIVER, J., concurs with UTTER, J.

Reconsideration denied February 22, 1991.